THE FARMERS' LOAN AND TRUST COMPANY *v.* THOMAS CLOWES and wife.

The statute incorporating the Farmers' Loan and Trust Co. (which allowed loans on bond and mortgage) declared that the act should expire at the end of fifteen years, except as to insurance on lives and the granting of annuities. By an act passed shortly before such expiration, a new name was given to the company and its existence (without fresh powers) was thereby continued. After this last act went into effect and after the expiration of the fifteen years, the company advanced on bond and mortgage. And the court *Held* that, as the power to make insurances on lives and the granting of annuities was saved, the company must have funds to apply to them and might invest in order to carry on such business; and, therefore, they were justified in such advance and the same would be presumed to have been done in the ordinary course of its business.

BILL of foreclosure by the Farmers' Loan and Trust Company, a corporation located and doing business in the city, county and state of New York, of a mortgage by the defendants Thomas Clowes and wife of Troy, dated the nineteenth day of August one thousand eight hundred and thirty-seven, on premises in the town of Brunswick, county of Rensselaer, for securing $3000 in one year, with interest.

The Farmers' Fire Insurance and Loan Company was incorporated on the twenty-eighth day of February one thousand eight hundred and twenty-two, with power to make loans on bond and mortgage. By the 20th § of the act, such act was to expire at the end of fifteen years from the time of its passage, except as to insurances on lives and the granting of annuities, provided that all contracts previously made should be binding and obligatory. And by an act passed on the seventeenth day of April in the same year (1822) the company had power to take property in trust. On the thirtieth of April one thousand eight hundred and thirty-six, an act was passed to alter its name to its present style of *The Farmers' Loan and Trust Company,* although no power is therein given to continue the granting any " *Loan.*" Its 6th § runs thus: "Nothing contained in this act shall be construed to confer upon this corporation any

"powers other than those conferred upon them by the original act amending the same, passed April 17 1822, except in relation to the change of its name and election and classification of directors." It will be seen that the original charter would expire on the twenty-second of February one thousand eight hundred and thirty-seven and that the bond and mortgage of Clowes and wife were given on the nineteenth day of August thereafter.

Plea interposed, for that all the corporate powers of the said complainants had ceased and expired from and after the twenty-eighth day of February one thousand eight hundred and thirty-seven "except as to insurances upon lives and of the granting of annuities" and except as to contracts previously made." And the said Thomas from his own knowledge and the said Nancy from information which she believes to be true, aver that the bond and mortgage mentioned in the bill was not executed in pursuance of any contract made previous to the expiration of such corporate powers nor in pursuance of any contract made for any insurance of life or lives or granting any annuity or annuities. But that the said bond and mortgage were given and executed by the defendants under an agreement made between the complainants and the defendant Thomas Clowes for a loan to be made by the complainants to the said defendant Thomas Clowes on the security of the said bond and mortgage at or about the time the said bond and mortgage bears date and after the said twenty-eighth day of February one thousand eight hundred and thirty-seven. And the defendants insist that, at the time of the making of the said agreement and at the time of the execution and delivery of the said bond and mortgage the complainants were not authorized by law to loan money to accept and receive the said bond and mortgage as a valid security or to make any loans on the security of bond and mortgage. And the defendants also insist that ever since the said twenty-eighth day of February one thousand eight hundred and twenty-seven the complainants have not been legally invested with or entitled to any corporate powers, rights or franchises whatsoever, " except as to insurances upon lives and of the granting of annuities" and except as to contracts made before that time. All which, &c."

Mr. *Clowes* in *pro per.* and in support of the plea argued, that the power of the company had expired, so far as the loaning of money was concerned and in every other respect not saved by the § 20 of its original charter; and he cited and commented on Laws of 1822 p. 47; Ib. 254; Laws of 1836 p. 281; 2 Cowen's R. 699, 710; 3 Wen. R. 485, 583; 7 Wen. 31; 5 Conn. 569, 574.

Mr. *E. H. Ely* and Mr. *Wm. Curtis Noyes,* contra, contended, 1. That the right to loan was incident to the powers expressly reserved by the § 20; and also, that the express power to loan was reserved: Kidd on Cor. 108; Co. Lit. 264; Ld. Raymond 439; 1 Johns. Ch. R. 508, 527.

2. That the defendant was estopped by the bond and mortgage from denying that the corporation existed: 14 Johns. R. 245; 8 Wen. 483.

THE VICE-CHANCELLOR :—It might be a serious question under the § 20 of the company's charter, whether all its powers did not expire within fifteen years except as to insurance upon lives and granting annuities and also whether the act of the 17th April 1822 was not, also, within the limitation of the § 20 of the original charter; but it is not necessary, now, to decide these points, inasmuch as, in reference to the powers expressly reserved to be exercised by the company under the § 20, the company must have funds which they may properly apply to pay annuities and claims due from them upon life policies and these they must, from time to time, invest in order to carry on the business. They had a clear right, therefore, to make a loan on bond and mortgage of these funds; and the presumption is that the loan was in the ordinary course of the business of the company.

There is also another view, which in my opinion is conclusive. The act of April 30 1836 is only reconcilable with the idea that the legislature intended to make the existence of the company perpetual or rather to permit it to exist during its pleasure. It was passed only a year before the expiration of the fifteen years limited by the § 20 of the original charter. A new name was given to it and limitations and restrictions were imposed upon it, all of which would

have been idle, if its charter was to expire within the time now contended for, a period of about ten months.

The existence of the company, therefore, so long as the legislature should see fit not to repeal its charter, was clearly intended and its power to make loans was equally clear.

· The plea is, therefore, overruled, with costs, with liberty to the defendant to answer.(*a*)

(*a*) The defendants answered; and, on proofs being taken, a decree passed for the plaintiffs before the vice-chancellor; and which decree was subsequently affirmed, on appeal, by the supreme court in the third judicial district and by the court of appeals at the June term 1850. The following are the facts and argument before the latter court and its opinion.

*Facts.*—On or about the 19th August, 1837, the appellant, Thomas Clowes, applied to the respondents for a loan of money and, on the 23d day of September thereafter, he borrowed of them $3,000 and gave his bond and mortgage for its repayment, dated the first mentioned day, conditioned to pay that sum within one year from date, with interest at seven per cent. per annum, payable yearly, as the same should accrue on the first day of November in each year.

The money thus loaned to the appellant was received by him in two checks for $1500 each, drawn by the respondents on the Bank of America, each dated the 23d of September 1837, payable to the order of the appellant, which were drawn by him, he having first endorsed them.

It appeared that the application for the loan was made by Judge Cushman, to whom the respondents had previously agreed to loan $28,000 upon his furnishing good security by bonds and mortgages, who probably received the checks and that he transferred to the appellant sixty shares of Phenix Bank stock on the day the checks were dated.

This stock was nominally worth $100 per share, and was at that time selling much above par. It was transferred by Judge Cushman to the appellant at 24 per cent. advance.

The respondents had previously held a much larger amount of Phenix Bank stock as a security fer a debt due from Judge Cushman and transferred to him 60 shares on the day he transferred them to the appellant.

It was proved that the respondents knew nothing of the transactions between Judge Cushman and the appellant aad had no interest in them or in the stock and that the terms of sale of the stock were those of Judge Cushman alone and the benefit of the sale exclusively his.

The cause was heard on pleadings and proofs before vice-chancellor McCoun, who made a decree for the respondents, which being appealed from, was affirmed by the supreme court before justices Harris, Watson and Parker in the third circuit.

*N. Hill. Jr.*, for the appellant, argued the following points:—

I. The complainants had no express legal authority to take said bond and mortgage, because their charter had expired at the time of the loan.

The 20 § of their charter, passed 22d February 1822, says this act shall

expire at the end of fifteen years from the time of its passage, except as to insurance upon lives and of the granting of annuities, provided that all contracts previously made shall be binding and obligatory.

Bond and mortgage dated August, 1837.

By an act passed same session, 17th April, complainants were further authorized to receive property on trust.

The evidence of Delafield and Fitch prove, as far as a negative can be proved, that the loan was not made either under the trust act or under the exceptions in the limitation clause.

If it had been, the complainants could have shown the affirmative and under such evidence were bound to do so.

They had neglected to make the annual statements required by law and this warrants a presumption against them. The act of April 30th, 1836, was doubtless intended by complainants as a renewal of their charter indefinitely and therefore perpetually. But it fails of its purpose because the complainants might have a legal existence beyond the fifteen years, whether the exceptions in the limitation clause contemplated the making new policies or only provided for existing ones, which must necessarily be uncertain in their duration and this last view receives confirmation from this clause, " provided that all contracts previously made shall be binding and obligatory."

The 18th section of the act provides that in respect of all debts which shall be contracted by the said corporation before the time limited for the expiration of this act, the persons composing the said corporation at the time of its dissolution shall be responsible in their individual and private capacities to the extent of their respective shares in the funds of the said corporation at the time and no further, in any suit or action to be brought and prosecuted after the dissolution of the said corporation.

II. The complainants had no implied power to loan money, because that power had been expressly given and expressly taken away by limitation : no implication can arise against the express words of a statute : 5 Hill, 226.

Even under more favorable circumstances, where there was nothing to negative the implication, the courts have held that the power to insure, &c., does not imply the power to loan money: *N. Y. Fireman's Insurance Co.* v. *Ely*, 5 Connecticut Rep. 567, 569, 574; *Fireman's Insurance Co.* v. *Ely*, 2 Cowen, 699; Sutherland, J. 709-10, Ch. J. Savage; *North River Insurance Co.* v. *Lawrence*, 3 Wend. 485; *Beach* v. *Fulton Bank*, same 583; *Life and Fire Insurance Co.* v. *Mechanics' Insurance Co.*, 7 Wend. 34; 5 Hill's R. 226; 2 Cranch 166.

This loan was not made by complainants out of surplus cash. They loaned it in September, because in the April before they had agreed with Cushman to do so. They had not cash to loan. They virtually exchanged Phenix Bank stock for mortgages and enabled J. P. C. to obtain from each of the mortgagors a bonus, which indemnified him for relinquishing the other arrangement.

The complainants were bound to have shown that they had surplus funds and the necessity of its investment.

They acted on the claim of a perpetual charter. In April, 1837, they held the security and were engaged to loan bonds to J. P. C. and others for $200,000. The idea of an implied power is an after thought, as was said in

a recent case, nothing but the recklessness of the complainants could have raised a doubt in their favor.

The trust power was distinct from the other business of the corporation and it was required by the law that the accounts should be kept separate. The usurpation of power by the corporation, if tolerated by the courts, by which bad precedents are established, will insensibly transfer the power of legislation to corporation directors and the more reckless they become the more ruinous the effect, if not sustained by the court.

The legislature creates a corporation with large capital and extensive powers. Before they rise they add largely to its business. Everything necessary is amply and legally provided for.

But still they limit its duration to fifteen years. And here is the forbidden fruit. And legal subtlety is invoked to make mortality immortal and the abortive act of 1836 is the result.

III. Bond and mortgage not conformable to the charter is therefore void.

3d section provides " that any such loans on bond and mortgage or other securities on real estate shall not be made payable in a shorter time than one year and the interest payable annually.

" The condition of the bond and mortgage is for the payment of the sum of $3,000 in one year from the date thereof, with interest thereon, at and after the rate of seven per cent. per annum, to be paid yearly as the same shall accrue on the first day of November in each and every year, until the said principal sum was fully paid."

1. Bond and mortgage dated August 1837, the accruing interest to the 1st November 1837 was paid on that day. The receipt of the interest was a practical construction of the deed.

The plain meaning is that whatever interest at the rate of 7 per cent. per annum should accrue on the 1st November in each and every year should on that day be paid. The 1st November occurs yearly and therefore the payment is yearly : though it may not be a whole year's interest. A child born on Christmas eve and lives a year and a day will have seen two yearly Christmas festivals. In the statute the plain meaning is a full year's duration. In the bond and mortgage the annual occurrence of the pay day, the 1st November.

IV. Bond and mortgage void for usury.

That the defendants paid usurious interest is not questioned; but it is denied that the complainants had any interest in the transactions of J. P. Cushman or were in any wise responsible for his acts. He made the arrangement by which the defendants with others were bound to receive and did receive, in lieu of cash, Phenix Bank stock at a rate much beyond its market value. During the months of August and September this stock, which was taken at 124, ranged from 106 to 11.

Taking the medium at 108, made the bonus paid Cushman by defendants $240. This loan was the result of an arrangement between complainants and Cushman, made in April or May 1837. They would not at that time have made loans in cash.

Cushman was largely indebted to complainants, secured by Phenix Bank stock. This identical stock was transferred by complainants to Cushman and by him to defendants and the other borrowers; so that the complainants

did not in fact make the loans in cash; but substituted mortgages for Phenix Bank stock.

Now, if the complainants conceived themselves benefited by this change of securities or if they felt themselves bound to indemnify Cushman for his expenses and trouble and furnishing the loan of $200,000 in bonds, they were responsible for his acts. If they chose for any reason to vest in him the power of making loans for them, they are responsible. That the power was in Cushman is certain; for why should all those borrowers pay such a bonus if the loans could be obtained without his intervention. They were all competent to negotiate their own business. As the authorized agent of complainant he made the bargain with the borrowers. The complainants ratified that bargain by aiding in carrying it out. It is no answer to say that complainants received no part of the bonus. If the cashier of a bank should receive a private douceur for discounting a note on which the bank received only legal interest, would it not be usury?

*Wm. Curtis Noyes*, for the respondents, argued the following points:—
The decrees appealed from should be affirmed, because—

I. The appellant is not at liberty to deny the existence of the respondents as a corporation under the laws of this state, having omitted to present any such defence in his answer. 2 R. S. 458, § 3.

But if he is, its existence is fully established by the several acts in relation to this corporation: Laws 1822, p. 47, § 3; Ib. p. 254; Laws of 1826, p. 281; *Far. Loan and Trust Co.* v. *Perry*, 3 Sandf. Ch. R. 339.

II. The taking of the bond and mortgage is presumed to have been lawful and in the ordinary course of the authorized business of the company: *N. Y. Fireman's Ins. Co.* v. *Ely & Sturges*, 2 Cowen's R. 664; *Far. Loan and Trust Co.* v. *Perry*, 3 Sandf. Ch. R. 339.

III. The restriction in the third section of the original act incorporating the respondents does not extend to its trust powers, which were conferred by a subsequent act, but if it did, it would not render a bond and mortgage void, the interest of which was payable in a shorter period than that limited by that section; its effect would be simply to extend the time of payment according to its terms; Laws 1822, p. 47, § 3; Ib. p. 254; *Edwards* v. *Far. Loan and Trust Co.*, 21 Wend. R., 467; 26 Ib. 541 S. C.

IV. The bond and mortgage were payable annually, according to the provisions of the third section already referred to: 2 Sandf. Ch. R. 339, supra.

V. The answer does not set up any usurious agreements between the appellants and the respondents nor any between the company through Judge Cushman as its agent and the respondents, nor does it allege any that were covertly usurious.

1. Instead of making any such allegations, it states that the agreement actually made with the respondents by Judge Cushman was to loan him $28,000 at seven per cent. interest.

2. The answer does not state that the respondents were parties to the arrangements alleged to have been made between Judge Cushman and the appellants, nor that he was their agent or acted as such, nor that they knew anything about it, adopted or ratified it in any way.

VI. The proofs do not make out a case of usury, even if the answer is suf-

1844.

FAR. LOAN AND TRUST CO.
*v.*
CLOWES.

ficient. To sustain such a defence it should have been shown that Judge Cushman was the agent of the respondents and actually made a usurious agreement for them but this was not done.

1. No express or implied appointment, as agent, was shown.

2. There is no ground for presuming he was agent, either as matter of law or fact.

3. He was not a director or stockholder of the company and had never been employed to transact any business for them.

4. Nor could he be considered as their agent on the ground of a subsequent adoption or recognition of his acts. The respondents had no knowledge of his transactions with the appellants and of course could not ratify what they did not know.

5. On the contrary, it is quite clear that he acted as the agent of the appellants.

(*a*) He applied to the respondents for the loan, as the answer admits and as he testifies.

(*b*) He delivered the bond and mortgage to the respondents.

(*c*) The appellant, T. Clowes, received the checks for the sum loaned, $3000, being the exact amount of the bond and mortgage and drew the money upon them through Judge Cushman upon his own endorsement, thus treating the transaction as his own.

6. Judge Cushman testifies that the agreement made by the respondents was to loan $28,000 at seven per cent. and of this sum the appellants were to receive and actually received the $3000, at that rate of interest, which was clearly not usurious.

7. Mr. Delafield testifies in substance to the same facts.

8. The only agreement ever made between the appellants and the respondents is that of which the bond and mortgage form the evidence and there can be no pretence that they are usurious. The respondents having loaned the full sum of $3000 and having reserved only seven per cent. upon it and having had no interest in the stock or the profit made upon it, if any, cannot by any possibility have reserved or taken or agreed to reserve or take, more than the lawful rate of interest.

*N. Hill,* in reply, insisted that the taking of the bond and mortgage, by the respondents, was an adoption and ratification of the acts of Judge Cushman in regard to the stock transaction and that, as they would have been void for usury in his hands, they were entirely void and could not be enforced by any one. He cited *Farmer's Loan and Trust Co.* v. *Walworth,* 1 Comstock 433-4; 5 Denio, 567; Broom's Maxims, 425.

HURLBUT, J., delivered the opinion of the court:—

The bill in this case was filed for the foreclosure of a mortgage given by the defendants to the plaintiffs, bearing date the 19th day of August 1837, to secure the payment of $3000 in one year from date with interest at the rate of seven per cent. payable yearly, as the same should accrue, on the first day of November in each year until the principal, which had been loaned by the plaintiffs to Mr. Clowes, should be paid.

The defendants rely upon the following grounds of defence.

1st. That the charter of the company had expired at the time of the loan;

2d. That, if in existence, the company had no authority to make a loan; 3d. That the bond and mortgage were not conformable to their charter and therefore void; and 4th,

That they were void for usury.

The plaintiffs were incorporated by an act of the legislature passed on the 28th of February 1822, under the name of "The Farmers' Fire Insurance and Loan Company" with power to make loans on the security of bonds and mortgages and certain stocks mentioned in the act and to receive such conveyances of real and personal property as might be necessary to enable them to obtain payment and satisfaction of such loans. .

They were also authorized to insure all kinds of property against loss or damages by fire, to insure upon lives and to grant annuities.

Their capital was fixed at $500,000, with power to increase it to a million; and the charter was limited so as to expire at the end of fifteen years, except as to insurance upon lives and the granting of annuities.

By a subsequent act passed on the 17th of April 1822, the company was authorized to take by deed or devise any effects or property which might be left or conveyed to them in trust and to assume and execute any trust which might be created by deed or devise in the same manner and to the same extent as any trustee. This statute allowed of an increase of their capital to one million of dollars more than was authorized by the original act, but contained no limitation as to the duration of the powers conferred upon it. A statute of April 30, 1836, changed the name and style of this corporation to that of "The Farmers' Loan and Trust Company" except as to this change and the classifications of directors the provisions of this act were of a restrictive character. It limited the amount of property which the company might at any time hold in trust to five millions of dollars and declared that nothing contained in it should be construed to confer on the corporation any powers other than those conferred by the original act of incorporation and the act amending it, except in relation to the change of its name and the election and classification of directors. This act also was silent as to the duration of the charter. These statutes taken together leave no room to doubt that the charter of the company was in existence at the time of the loan which is the subject of this controversy. Their corporate capacity remained, with power to insure upon lives, to grant annuities and to assume and execute trusts. These powers were conferred without any limitation in respect to the time of their duration, and must exist until they are repealed by an act of the legislature.

In respect to them the charter is perpetual. But the defendants still insist that the company had no express power to loan money, that having expired by limitation at the end of fifteen years and that such a power cannot be raised by implication after an express withdrawal of it by legislative design.

Although the act of April 1836 designates this corporation as a loan company, it did not confer any powers which could warrant that title and all it did in this respect was to create a *misnomer*. So that the authority of the company to make loans of money can only be upheld as an incident to the other powers conferred by their charter. It has been seen that by the original act of incorporation this power was not only expressly conferred, but was put forth as the leading one with which the legislature saw fit to clothe the company. They were authorized to increase their capital to a million of

dollars, mainly, as it would seem, for the purpose of accommodating borrowers and care was taken that they should loan a large share of their capital to persons residing without the limits of the city of New York. This power ceased at the expiration of the period mentioned, after which the company no longer existed for the express purpose of loaning money, but nevertheless remained a corporation for other declared purposes, with precisely the same rights and powers as though those purposes had alone been the object of their original creation. They were not forbidden to loan money after the expiration of fifteen years, but they were not thereafter expressly authorized to do so.

They were no longer a loan company, but were now a life insurance and trust company with power to grant annuities and having a right to employ all their original capital in the business to which they had become restricted and to hold the property in trust to the amount of five millions of dollars. It could hardly have been contemplated by the legislature that their capital should remain unproductive in their vaults and especially not that the funds held by them in trust should remain uninvested. It was their very business to see that they were safely and properly invested as well for the security of the beneficiaries as for their own protection. In no other way could they preserve their existence and solvency or execute trusts in the manner of other trustees. The case differs from the *N. Y. Fireman's Insurance Company* v. *Ely & Parsons*, 5 Conn. R. 560; 2 Cow. R. 278, where the charter provided amply for investing the funds of the corporation and pointed out the manner in which it should be done, while it expressly denied banking powers and the court held that the discount of a note by a fire insurance company under such a charter was unauthorized and void.

I think the true view of the powers of the plaintiffs under their charter was taken by the learned assistant vice-chancellor in the case of *The Farmers' Loan and Trust Company* v. *Perry and others*, 3 Sandf. Ch. R. 339, where their authority to make loans upon bond and mortgage was sustained as a proper and necessary means of enabling them to effect the purposes for which they were incorporated and especially to fulfil their duties and obligations in respect to the trust powers conferred by their charter. Assuming then that the plaintiffs were authorized for that purpose to make loans, it rested upon the defendants to show expressly that the loan in question was not made in the proper management or investment of the funds entrusted with the company, as in the absence of proof to the contrary it will be intended, that the company were pursuing their lawful business when they advanced the money to the defendants upon the securities in suit. The evidence adduced by them on this subject does not establish, with any certainty, from what fund the loan proceeded and I think the defence, upon this ground, must be deemed to have failed.

The next objection is, that the bond and mortgage were not taken according to the charter, the 3d section of which provides "that any such loans on bond and mortgage or other securities on real estate shall not be made payable in a shorter time than one year and the interest payable annually." This section appears to have related to the securities to be taken on the loans which the company were expressly authorized to make during the first fifteen years of their existence and I am inclined to think became inoperative when the express power of the company to make loans ceased. But if not, I am

unable to perceive that the securities, in the present case, were taken in violation of this provision of the statute. The bond and mortgage were payable in one year with interest to be paid yearly as the same should accrue on the first day of November in each year. Their language, in this respect, is capable of being construed in harmony with the provisions of the 3d section of the act, by disregarding the first November after the date of the securities as a time of payment and treating the first payment of interest as having accrued on the first day of November 1838, which it seems proper to do in order to carry out the intention, very clearly expressed, that the interest should be payable " as the same should accrue yearly." Nothing remains to be considered but the defence of usury, which, as it seems to me, has altogether failed. The plaintiffs advanced their checks for the precise amount of the securities received from the defendants and it was by no act of the former that Mr. Clowes came to receive less than the full amount of the loan in money. His arrangement with Judge Cushman, by which the latter induced him to receive the stock in lieu of a part of the money, is not shown to have been known to the company, nor does it appear that they were or could have been benefited in any manner by the transaction.

The decree of the Supreme court must be affirmed.