# CASES ARGUED AND DETERMINED

IN

# THE SUPREME COURT,

## JANUARY TERM, 1856.

~~~~~~~~~~~~~~~~

### SMITH *v.* EUREKA FLOUR MILLS CO.

Under our laws, the power of corporations to create debts is treated as incident to the express powers, and not as itself one of the express powers.

The power to issue bills or notes as a circulating medium is expressly excluded by the statute; the right to issue them in all other proper cases must be inferred as incident to the expressed powers or objects of the corporation.

The express powers of a corporation must be exercised in the manner pointed out by the statute, but the powers merely incident thereto may be exercised by its officers or agents.

Where the promissory note of a corporation, executed by its officers, provides that only the assets of the corporation, and none of the property of stockholders, shall be liable, the corporation cannot raise the objection as affecting its own liability.

Where the answer in a suit against a corporation on its note, relies simply on the want of power of the corporation to issue notes, the defendant cannot afterward object that the plaintiff has not shown that the officers executing the note were empowered by the corporation to do so.

APPEAL from the District Court of the Twelfth Judicial District.

This was an action brought on a promissory note, of which the following is a copy:

$5,000 00. San Francisco, Aug. 5th, 1854.

On the fifth day of January, 1855, the Eureka Flour Mills Company promises to pay to the order of R. Chenery Five Thousand Dollars, for value received, with interest of three per cent. per month. The property of the Company only is pledged for the payment of this note, without recourse in any event to the private assets of the stockholders.

          (Signed)        I. FRIEDLANDER, President.
CHARLES L. CASE, Secretary.

The note was regularly endorsed to the plaintiff, who, at the com-

mencement of this suit was the owner. The complaint contained the usual counts, and alleged that the Eureka Flour Mills Co. was a company duly incorporated as a corporation, under and by virtue of the laws of this State.

The answer admitted the act of incorporation, and plead the act under which the company was incorporated, to wit: the Act of April 14th, 1853, to provide for the formation of corporations for certain purposes; that the said note was illegal and void; that by virtue of section fifteenth, which provides that "no corporations organized under said act shall by any implication or construction be deemed to possess the power of issuing bills, notes, or other evidence of debt, for circulation as money," the defendants had no power to make the note in question.

At the trial, the plaintiff introduced no witness, and after the opening of his case, defendants' counsel made a motion of non-suit, on the ground that plaintiff had not in his complaint, nor at the trial, stated or proved facts sufficient to constitute a cause of action, which motion the Court denied.

Defendant afterwards moved for a new trial, which was refused by the Court, and judgment for plaintiff entered; defendant appealed.

*Hall McAllister and Francis Ganahl* for Appellants.

1. The defendants were incapacitated from the nature of their incorporation to make the note in question, both at common law and by the statute.

2. The plaintiff did not state in his complaint, or prove at the trial, that the defendants in making the note in question were acting in the legitimate scope of their incorporation.

Anciently, at the common law, corporations could only contract by seal, but by an *absolute necessity* this rule was broken in upon, and corporations were allowed to enter into a simple contract, as to hire a servant, etc. 7 Cranch, 365; Grant on Corporations, 60.

So the appointment of an officer, though not under the corporate seal, is held valid by a corporation borough. Regina v. Grimshaw, 16 Law J., (N. S.) Q. B., 385; Saunders v. Owen, Salk., 147.

The liability of corporations upon their contracts without their corporate seal, has been extended, but the touchstone of necessity is still the test and rule of their liability upon such contract. If such contract be absolutely necessary to the carrying into execution the very purpose of the incorporation, then the corporation is liable; but if such simple contract is not necessary or incident to the purposes for which the corporation was instituted, then the corporation is not bound. Arnold v. Mayor of Pool, 8 Dowl., N. S., 599; Bowen v. Morris, 2 Taunton, 389; Paine v. Guardians of Strand Union, 8 Q. B., 326; Cox v. Midland Counties Railway Co., 3 Exch., 268; Lampill v. Billercary, 3 Exch., 306.

Upon this test of necessity as to the liability of corporations upon simple contract, all the English authorities hold that trading corporations can alone be liable upon promissory notes and bills of exchange, the

Courts holding that the making of such contracts is necessary only to the existence of such corporations. Mayor of Ludlow v. Charlton, 6 Mees. & Welsby, 823; 6 Ad. & E., 361; Murray v. East India Co., 5 B., and Ald., 204; Broughton v. Man. W. Works, 3 Barnwell and Ald. 1; Beverly v. Lincoln Gas Comp., 6 Ad. and E., 829; Rew v. Pettit, 1 A. and El., 196; Church v. Imp. Gas Light Co., 6 Ad. and E., 846; 4 A. and E., N. S., 894; Mayor of Ludlow v. Charlton, 6 M. and W., 815. This is the English rule, that while corporations can sue or be sued *in assumpsit* on their *implied* promises, if such implied promise and contract be necessary to the very end and existence of the corporation, a written contract to pay money without seal, and even a sealed promissory note and bill of exchange cannot bind any but a trading corporation, as only to such corporations are such contracts deemed necessary and essential. The doctrine of necessity in the English rule has been extended in America, and the test of the liability of *corporations in assumpsit* upon their simple contracts, is whether the corporation in making such contract was acting within the legitimate scope of its corporate powers, to wit: those powers specially granted and implied powers necessary to carry their special powers into execution. 7 Cranch, 297; 12 Johns., 226; 14 Johns., 118; 4 Sergt. and R., 16; 19 Johns., 60.

There is no distinction in the application of this rule between contracts to pay money, promissory notes or other contracts. If the corporation was acting in the legitimate purposes of its incorporation, they are liable. The application of this rule does not alone hold trading corporations liable on their promissory notes, but all other corporations, if such notes be given in the due course of its business, and in the legitimate exercise of its corporate powers. Mott v. Hicks, 1 Cowen, 513; Baker v. Mechanics Ins. Co.

The rule both of the English and American authorities, is applicable only so far as the corporation is not restrained from entering into the contract either by charter or statute.

Applying the English rule, it cannot be contended for one instant that a corporation created for the manufacture of flour, as the name itself indicates, can execute a note like the one in question. Applying the American rule, the same presumption must follow, that a negotiable promissory note like the one in question, is entirely foreign to the nature of a corporation created for anything but trading purposes, and that the corporation in so making it was acting in the legitimate purposes of its incorporation. But a consideration of the powers of the corporation under the statute by which it holds its power, comes next in order before the application of the American rule. The act pleaded is the Act of 14th April, 1853, an act to provide for the formation of corporations for certain purposes. There is a prior act, passed in 1850, entitled "An Act concerning corporations." The Act of 1853 has no connection with it. The case of Magee *et al.* v. Mokelumne Hill Co., 5 Cal., 258, gives a construction to the Act of 1850, and the reasoning in that case cannot apply to the case at bar, or to the statute of 1853. The Act of '53 provides for the

formation of corporations for certain purposes. It further provides: "The corporate powers of the corporation shall be exercised by a board of not less than three trustees." Sec. 5. It provides for their election, etc.

The total amount of the debts of the corporations shall not at any time exceed the amount of the capital stock paid in. Sec. 14. No corporation created under it shall by any construction, etc., be deemed to possess the power of issuing bills, etc., for circulation as money. Sec. 15. Each stockholder shall be individually and personally liable for his proportion of the debt. Sec. 16. The capital stock can be increased in only one way. Sec. 20. And lastly, no corporation under this Act shall be subject to the Act of 1850.

There is no clause in the statute about receiving deposits, negotiating loans, discounting notes, etc., as in the Act of 1850, and which went so materially into the *decision of the Court* in the case of the Mokelumne Hill Co., that that act was leveled at banks, and that the evidence of debt to be issued to bring the case within the statute must be bank notes. The third section stands by itself. There is nothing in the act to show that banks and bank notes were meant and pointed at by the Legislature. The section simply says that no corporations shall have the power by implication or construction of issuing evidences of debt for circulation as money; that is, evidences of debt which by implication or construction might become a circulating medium. The section does not mean to say that corporations shall not incur responsibilities in the legitimate course of its business, and by their simple promissory notes, but intends that no such promissory note, by any construction, shall be of such a nature as to pay as money. The note in question is negotiable, bearing a high rate of interest, and the liability of the individual stockholders upon the face of it is expressly limited. This is a circulating medium. Smith v. Strong, 2 Hill, 241. If this note, thus illegal upon its face, limiting the liability of the members of the corporation, negotiable, and already negotiated through several hands, is allowed under the act, what is to prevent the corporation from negotiating its bills, having a paper currency, and carrying on the business of a bank, provided it can gain credit. Broughton v. Man. W. Works, 3 Barn. and Ald., 1.

Such construction ought to be put upon a statute as does not suffer it to be eluded. People v. Utica Ins. Co., 15 Johns., 381. Can it be contended, then, that appellants, in making a negotiable promissory note restraining the liability of its members, was acting in the scope of its legitimate incorporation in the rule laid down in the cases of Mott v. Hicks, and Barker v. Mechanics' Insurance Company.

3. But granting that the defendant had the right to make a promissory note, the complaint does not allege, nor has the plaintiff proved, that the two persons signing the note were authorized to do so by any corporate action of the defendant. If the defendant is a joint stock company or partnership, then the company or partnership name must be signed in order to bind defendant. If the defendant is a corporation, then its powers must be exercised "by a board of not less than three

trustees," under the statute. It is not even alleged or proved that Friedlander and Case are the President and Secretary of the corporation, duly appointed. Spofford *v.* Wyckoff, 4 Hill, 442; 1 Pick., 372; 19 Johns., 60; 13 Mass., 199.

The complaint does not show that it was usual for such corporations to give such notes, restraining the liabillty of its members. All these facts should have been alleged and proved to make out a *prima facie* case for plaintiff. Dickinson *v.* Valpy, 10 Barn. and Cress., 28; Mott *v.* Hicks, 1 Cowen, 513; Baker *v.* Mechanics Ins. Co., 3 Wend., 94.

To this, it is contended that these things, necessary to the plaintiff's case, should be set up in defence if they did not exist; which would make the defence consist of *negative* allegation, and subvert all the rules of pleading. The answer declares that the note is illegal and void, and that the defendant could not make it. This admits none of the allegations necessary to the plaintiff's complaint, in which, in fact, there was nothing to deny, as it did not state a cause of action; and furthermore, a defective declaration is not aided by a bad plea.

*Baldwin and Bowman* for Respondent. ·

The proposition that the Court erred in refusing to non-suit the plaintiff, is based on the ground that the defendants were not liable to pay the note sued *because it was not made under the seal of the corporation.*

It can hardly be necessary to contend against such a proposition in this Court. It is true it was formerly held in England that a corporation could only be bound by act under seal, but this was before the modern era of trade and commerce which has given birth to a great variety of companies to carry on manufactures, trade, commerce, insurance, etc. ; and in regard to such corporations it is not now the law in England or America that a corporation can only be bound by the corporate seal.

" Corporations have of late been established for the purpose of carrying on trading speculations, and where the nature of their constitutions is such as to render the drawing of bills or the constant making of any particular sort of contracts necessary for the purposes of the corporation, there the Courts have held that they would imply in those, who are according to the provisions of the charter carrying on the corporation concerns, an authority to do those acts without which the corporation could not subsist." Beverly *v.* Gas Light and Coke Co., 6 A. & E., 829.

And in the case of Church *v.* Imperial Gas Light Co., ibid, 861, Lord Denman in reviewing the old doctrine, says that the power to accept bills of exchange and to issue promissory notes by companies incorporated for purposes of trade and commerce, stands on the same ground of the power to employ inferior servants, and is among the exceptions to the old Common Law rule requiring the corporation seal to bind the company.

In the United States, contracts of a corporation rest upon the same

footing as those of natural persons, and are valid without seal, whether expressly made by the corporation or by its officers or agents. Bank of Columbia *v.* Patterson's Heirs, 7 Cranch, 299 ; Fleckner *v.* Bank of U. S., 8 Wheat., 338.

A corporation may bind itself by contract without its corporate seal. It may give a promissory negotiable note by its President. Mott *v.* Hicks, 1 Cow., 513 ; Chestnut Hill Turnpike Co. *v.* Rutter, 4 S. & R., 16 ; Union Bank *v.* Ridgely, 1 H. & G., 324.

Or arising by implication of law, either from the acceptance of an executed consideration or from the ratification of acts done by parties assuming to be agents, although without sufficient authority. Kennedy *v.* Balt. Ins. Co., 3 Har. & G., p. 367 ; Dunn *v.* St. Andrew's Church, 14 Johns., 118 ; Episcopal Charitable Soc. *v.* Episcopal Ch., 1 Pick., 372 ; Randall *v.* Van Vetcher, 19 Johns., 60.

There is nothing in the objection that the appellant was inhibited from making a note by the 15th section of the Act concerning corporations. Magee *v.* Mok. Hill Co., 5 Cal., 258.

The second error assigned by the appellant cannot be maintained—because the answer contains no statement of facts warranting the introduction of the proposed proof.

The stockholders have taken good care by the terms of the note to exempt themselves from personal liability. (See copy of note in complaint.) It would therefore be very convenient to avoid paying the note by the company altogether, by showing a want of authority to make it, or that the consideration was illegal, or that it circulated as money, if such a plea could prevail. Be that as it may, the defendants plead in answer just nothing at all, and appeal no doubt for delay, and respondent's counsel submit that this case is one in which the respondent is entitled to the utmost damages.

There is nothing in the fact that three trustees did not sign the note. The 5 sub. of § 1 of "Act concerning Corporations" provides that the company shall have power *" to appoint such subordinate officers and agents as the business of the corporation shall require."* Comp. Laws, 280.

The complaint alleges the note was made by the corporation—the answer does not deny it—*non constat,* it was made under a resolution of the trustees or otherwise, or the President and Secretary may have made it by virtue of their office as agents or officers, being thereunto empowered by the very act of their appointment. The Courts have uniformly held that *prima facie* the apparent agents or officers of a corporation when acting in its name may bind the corporation. See cases cited in note to Mayor of Ludlow *v.* Charlton, 6 M. & W., 823.

The opinion of the Court was delivered by Mr. Justice HEYDENFELDT. Mr. Chief Justice MURRAY concurred.

1. The policy of this State has altered the rigidness of the Common Law which disabled a corporation from making a contract except under its corporate seal. The act of incorporation, instead of being as form-

erly a favor granted by the sovereign to the subject, has under our system become a matter of right available under general laws. Under those laws the power of corporations to create debts is treated as an incident to the express powers, and not as in itself one of the express powers. This is evident from the 3d section of the Act of 1850, and the 15th section of the Act of 1853. In both these sections corporations are prohibited from issuing bills or notes for circulation as money; to this expression we gave a construction in the case of Magee & Beals *v.* The Mokelumne Hill Canal and Mining Co., 5 Cal. 258. To this we will add that we must apply the rule *expressio unius est exclusio alterius.* One cause of issuing bills or notes is expressly excluded; the right to issue them in all other proper cases must be inferred as an incident to the expressed powers or objects of the corporation.

2. It is objected that the plaintiff failed to show that the President and Secretary who signed the note were empowered by the corporation to do so. The answer of the defendant rendered this unnecessary; it proceeds, in the defence, simply to rely upon the want of power in the corporation to issue notes, which we have above shown was unsustained by the law. To force upon the plaintiff the necessity of proving the execution of the note to have been authorized by the corporation, the answer should have denied the "genuineness and due execution" of it under oath, as is required by the 53d section of the Practice Act, otherwise the Act provides "it is deemed to be admitted."

3. The next objection is that the Act of 1853 requires the corporate powers to be exercised by a board of three trustees, who should have executed the note. But this is already answered; the power to make a note is not one of the express corporate powers but only an incident to those powers. The latter are those which must of necessity be included in the main objects of the corporation. Aside from them, all corporations by the general Act have power to make by-laws for the "organization of the company," the "management of its property," the "regulation of its affairs, and for carrying on all kinds of business within the objects and purposes of the company," in which there is no reason to exclude the right of making promissory notes.

The remaining point is, that the note provides that the property of the company only was pledged for its payment, without recourse in any event to the private assets of its stockholders. To this the answer is simple: the defendant has no right to make the objection; the corporation is liable, and it cannot affect that liability whether the stockholders are exempt or not. If they are not exempt, the only result is that the plaintiff has more security for his claim.

Judgment affirmed, with ten per cent. damages.