Union Water Co. *v.* Murphy's Flat Fluming Co.

---

## UNION WATER CO. *v.* MURPHY'S FLAT FLUMING CO. *et al.*

A MORTGAGE given to secure a debt for the payment of which there is no written agreement, is a contract "founded upon an instrument of writing" within the meaning of the Limitation Act, and an action for its foreclosure may be maintained at any time within four years from its breach, notwithstanding that the statute has in the meantime run against the debt.

A corporation, unless expressly prohibited by law or the provisions of its charter, has power to make all contracts that are necessary and usual in the course of the business it transacts as means to enable it to effect the object of its creation.

A contract by a corporation, which is not upon its face necessarily beyond the scope of its authority, will, in the absence of proof, be presumed to be valid.

A loan of money upon mortgage security by a corporation organized for the purpose of constructing ditches for the conveyance and sale of water is not necessarily an act exceeding its corporate powers. Such contract, if necessary to attain its general objects and made as an incident to the exercise of its granted powers, is valid. In the absence of proof, its validity will be presumed.

In an action by a corporation upon a contract made by it with the defendant, the latter cannot interpose as a defense that the plaintiff in making the contract has exceeded the power conferred by its charter or the law under which it was formed. The question of a violation of its charter is one between the State and the corporation, and cannot be investigated collaterally by individuals.

A mortgage upon a flume or ditch not completed but proected and in process of construction, covers the whole work when completed, if apt terms expressing that intent are used in the instrument.

A flume for the conveyance of water is in the nature of real estate, and a mortgage upon it will, without any special provisions, include all improvements then upon the line of the work; and also all those which may afterwards be put thereon.

A decree foreclosing a mortgage and barring the equity of a subsequent mortgagee made a party defendant, should direct that the surplus proceeds of the sale after payment of the amount due upon the first mortgage, be applied upon the claim of the junior mortgagee.

A judgment will not be reversed for an error therein which the record enables the Appellate Court to fully correct.

The judgment will be modified and affirmed.

APPEAL from the Sixteenth Judicial District.

The "Union Water Company," plaintiff, was a corporation formed under the general law for the purpose of conducting water through certain ditches to mining districts, and the Murphy's Flat Fluming Company, defendant, was also a corporation formed in the same manner for the purpose of constructing a flume to be used in mining operations. March 5th, 1858, the latter company executed to the former a mortgage, by which in consideration of the sum of $10,000 expressed to have been paid by the mortgagee, it conveyed " all and singular the right, title, interest, and possession, as well in equity as in law, which the said party of the first part has or may have in and to that certain sluice and flume known as the sluice and flume of the said party of the first part, situate in said County of Calaveras, at and near Murphy's Camp, and extending from Murphy's Flat to a point below on Angel's Creek, together with all right, privilege, or benefit, in and to the water passing, or to pass through said flume or sluice ; and in and to the waters of Murphy's Flat; and in and to all and every the waters of Angel's Creek, and which may be or come to be in the possession of the said party of the first part, and as well the said sluice and flume when completed, and all and every part thereof, and so much

thereof as is now complete, and all rights, benefits, and privileges which may accrue to the said party of the first part under a certain agreement," etc.

The consideration of the conveyance recited that, " whereas the said party of the first part is justly indebted to the said party of the second part in the sum of $10,000, money loaned, payable in eighteen months from the date hereof, with interest," etc. If therefore the said indebtedness should be duly paid, the conveyance should be waived; but otherwise, of force.

No note accompanied the mortgage, nor was there in it any direct promise to pay the debt.

At the time of the execution of this mortgage the flume mentioned therein was in process of construction and was completed for a distance of only 1,200 feet. May 15th, 1858, and after the flume was finished for a distance of 3,600 feet, the Murphy's Flat Company executed a second mortgage thereon to one Traver for some $4,000, to secure a note for that amount executed to him at the same time.

The action was commenced by plaintiff June 4th, 1862, to foreclose its mortgage, and Traver, as subsequent mortgagee, was made a party defendant. The mortgagor made no defense, Traver plead the Statute of Limitations, denied the power of plaintiff to make the mortgagee contract—and claimed that no property was covered by plaintiff's mortgage, except the portion of the flume in existence at the date of its execution.

The plaintiff had judgment for a foreclosure and sale of the whole property and application of the proceeds to its debt. The decree barred the rights of Traver in the property, and contained no direction as to the disposition of any overplus which might remain after application of the proceeds to plaintiff's debt.

From this judgment the defendant Traver, appeals.

*H. O. Beatty*, for Appellant.

I.  Plaintiff's debt was barred by the Statute of Limitations before suit was brought, and therefore no recovery could be had against the Murphy's Flat Company, to the prejudice of Traver, who plead and relied upon the Statute of Limitations as a bar to the action.

Union Water Co. v. Murphy's Flat Fluming Co.

There was no note taken for the money when loaned, nor was there any other written instrument taken or given, except the mortgage, in connection with the loan.

The mortgage recites that the money had been loaned by the plaintiff to the Murphy's Flat Fluming Company, and that the mortgage was given as security; but the mortgage itself contains no promise to pay.

To determine the character of this debt due from the Murphy's Flat Fluming Company to the plaintiff, let us suppose the mortgaged property had been totally destroyed before the time for the payment of the borrowed money had arrived, and plaintiff had wished to bring suit for the $10,000. To foreclose a mortgage, if the property had no existence, would be an absurdity. No Court of Equity would entertain jurisdiction the facts being known. The plaintiff, then, would have to bring suit in a Court of Law. What would be the form of action? and on what would it be brought? The mortgage contains nothing like an agreement, or promise to pay. It could not be the foundation of an action. You could not maintain debt or covenant on it; but the proper action would be assumpsit on the implied promise to pay arising from the act of borrowing. The mortgage would not be the foundation of the action, but might be evidence, in connection with other evidence, of the amount borrowed, the date of borrowing, the time of payment, etc.

Upon this proposition there is a decision of this Court directly in point. In the case of *Shafer* v. *The Bear River and Auburn Water and Mining Company* (4 Cal. 294, 295), this question was brought up in a case where the debt was as plainly recited as in this case; and the plaintiff having recovered judgment for his debt (there was no attempt to foreclosure), this Court set the judgment aside, and among other things, said: " There is no express covenant in the mortgage to pay the money, and no action will therefore lie, on its mere recital of the existence of a debt." This is directly in point, and shows that the declaration should have been in assumpsit, and not in covenant.

If the action must be in assumpsit, it is clear, that it is barred by the two year Statute of Limitations. The statute says: " Within two years, an action upon a contract, obligation, or liability, not

founded on an instrument in writing." In this case, the obligation to pay and the ability to recover judgment for the debt, did not depend on any written instrument. The written instrument was a mere security for the payment of the debt. The debt itself existed in parol. If the debt was barred, then the mortgage, by operation of law, became a nullity. This Court has repeatedly decided that the mortgage is a mere incident of the debt. (See *Goodenow v. Ewer*, 16 Cal. 466, and many other cases.)

Suppose A is indebted to B by note, which is already overdue two years. To secure that note he executes a mortgage. When would the note be barred? Unquestionably at the end of two years from the execution of the mortgage. The mere recital that he owed an amount secured by note, already two years past due, would not extend the time of the note, but it would be barred at the same period as if no mortgage had been given. In that case it is clear the mortgage would only have an existence for two years. It would expire with the note. So in this case, the mortgage was given to secure a debt existing in parol, and expires at the end of two years; in other words, at the very time the debt would be barred if no mortgage was given.

II. The Union Water Company, as a corporation, had no right to loan money or to take mortgages.

It is a general rule that all corporations created by statute, whether general or special, have powers strictly limited to the terms in which they are conferred. In other words, corporations being the creatures of the law, can have no powers except those expressly conferred by the law, and such as are necessary to carry into effect those that are expressly conferred. The authorities upon this point are numerous and uniform. (See *Dunbar* v. *San Francisco*, 1 Cal. 356; 6 Pick. 32; 13 Peters, 587.)

In vain will you look in our statutes for any authority conferred on a mining corporation to loan money or take securities. If the corporation had no right either to loan the money or accept the mortgage, it would seem that it could not maintain any action on the loan, and more especially is it clear, that the mortgage would be absolutely void. While, possibly, there might be a question as to whether the action of assumpsit might not be maintained for

money had and received, where money had been paid on a void contract, it is absolutely certain, that no action can be maintained on any mortgage or other obligation given in pursuance of a void contract.

In the case of the *North River Insurance Company* v. *Lawrence* (3 Wend. 482–485), Chief Justice Savage, in delivering the opinion of the Court, says: "It has often been decided that a corporation can do no act but such as is expressly authorized or necessarily implied in their act of incorporation. The plaintiffs might loan money on bond and mortgage, but not on note. * * * It is sufficient answer to this action that the plaintiffs, in taking the note in question, have done an act which they had no authority to do. They have no capacity to become payees or indorsees of a promissory note. They cannot, therefore, sustain a claim in that character."

Here the plaintiff had no capacity to become a mortgagee, and therefore could not maintain an action in that character.

In the case of *Beach* v. *Fulton Bank* (3 Wend. 583), the same doctrine is more elaborately laid down and explained. The conclusion of that part of the opinion to which I refer is in these words: "And incorporated companies, having no powers except such as are granted, or necessarily incident, a company having no such power" (power to loan money), "express or implied, has no capacity to lend money, and of course cannot sue for it."

In 7 Wendell the same doctrine is laid down and enforced. That is, if a corporation not authorized by law to loan money does loan it, it amounts to an absolute forfeiture of the amount loaned. It is not merely a voidable contract, but is absolutely void. No suit can be maintained, either on the contract, or for money had and received.

The following language, being perfectly applicable to this case, is quoted from the last mentioned authority (7 Wend. 35): "But there is a fundamental objection to plaintiffs' recovery. They have no authority, by their charter, to loan money except on bond and mortgage. (Laws of 1822, 54.) They cannot make a valid contract of loan in any other manner; and, therefore, not only the security which may be taken but the contract itself is void, and

cannot be the foundation of an action. Where a corporation is prohibited from discounting notes, or taking other peculiar security, but have a general power given them by their charter to loan money, if they make a loan and take the prohibited security the security is void, but the contract of loan is valid, and the money may be recovered under the general counts ; but where not only the security, but the contract also is illegal, it cannot be enforced."

If the instrument was void, it could no more be used to prejudice a third party, than it could be against the mortgagor.

III. The decree, in this case, is so drawn as to forever bar the defendant, Traver, from proceeding on his mortgage ; and yet it makes no provision for paying to him any part of the proceeds of the sale under the decree, although the amount of the sale might be more than the amount of the elder mortgage. Nor does it draw any distinction between that part of the property which was created · before and that created after the first mortgage.

*P. L. Edwards,* for Respondent.

CROCKER, J. delivered the opinion of the Court—COPE, C. J. and NORTON, J. concurring.

This is an action to foreclose a mortgage. No note or other written obligation to pay the money appears to have been executed, nor does the mortgage contain any covenant or agreement to pay the mortgage debt. The action was commenced more than two years and less than four years after the time of payment of the money specified in the mortgage, and the appellant therefore contends that the action is barred by the Statute of Limitations. It is true that in the absence of a direct agreement to pay the money specified in the mortgage, the plaintiff is confined to his remedy against the mortgaged property, and can have no personal judgment against the mortgagor. (*Shafer* v. *The Bear River and Auburn W. and M. Co.,* 4 Cal. 294 ; *Brooks* v. *Maltbie,* 4 Stew. & Porter, 96 ; *Hunt* v. *Lewin,* Id. 138 ; *Hickox* v. *Lowe,* 10 Cal. 210.) But it does not follow that because there is no personal liability the action is barred in two years. The action is upon a contract " founded upon an instrument of writing," to wit: the

mortgage, and is not, therefore, barred until four years after the cause of action accrued.   This point, therefore, is not tenable.

The next point is that the Union Water Company, being a corporation, had no right to loan money or to take mortgages.   The act of April 14th, 1853, under which the plaintiff was organized, confers upon corporations of this character power " to make by-laws, not inconsistent with the laws of this State, for the organization of the company, the management of its property, the regulation of its affairs, the transfer of its stock, and for carrying on all kinds of business within the objects and purposes of the company." This is a direct vesting of power in the corporation, and is to be construed accordingly ; and under it this Court has held that a corporation has power to make promissory notes, not as an express power, but as an incident to those powers.   (*Smith* v. *Eureka Flour Mills*, 6 Cal. 1.)   Independently of this special statutory provision, the common law annexes to a corporation when created, certain incidents and attributes, and there are several powers and capacities which tacitly and without any express provision are considered as inseparable from every corporation, among which is the power to make contracts and contract obligations.   (Ang. & Ames on Corp. Sec. 110.)   These incidental powers are, however, regulated and limited by the act or charter of incorporation.   The general principle is, however, that a corporation has no other powers than such as are specifically granted, or such as are necessary for the purpose of carrying into effect the powers expressly granted.   That is, the general powers of a corporation must be restricted by the nature and object of its institution.   (1 Cal. 356, 452 ; 2 Id. 538 ; Ang. & Ames on Corp. Sec. 111.)   It has been properly held that the general powers incident to bodies corporate are restricted by the nature and object of the institution of each, and every such corporation has power to make all contracts that are necessary and usual in the course of the business it transacts, as means to enable it to effect such object, unless expressly prohibited by law or the provisions of its charter.   (*Barry* v. *Merchants' Exchange Co.*, 1 Sandf. Ch. 280, where this question is fully examined ; Ang. & Ames on Corp. Sec. 257.)   When the charter or act of incorporation, and valid statutory law are silent as to what contracts a cor-

Union Water Co. *v.* Murphy's Flat Fluming Co.

poration may make, as a general rule, it has power to make all such contracts as are necessary and usual in the course of its business, as means to enable it to attain the object for which it was created, and none other. (Id. Sec. 271.) The dealings of a corporation, which, on their face, or according to their apparent import, are within its charter, are not to be regarded as illegal or unauthorized, without some evidence to show that they are of such a character. In the absence of proof, there is no legal presumption that the law has been violated. On the contrary, they, like natural persons, are entitled to the benefit of the rule which imputes innocence rather than wrong to the conduct of men. (Id. Sec. 111; *Chautauque County Bank* v. *Risby*, 19 N. Y. 369, 381.)

The mere fact that a corporation, organized for the purpose of constructing ditches for the conveyance and sale of water, makes a loan of money, does not, of itself, make such contract void, as an act exceeding its corporate powers. Such a contract may be necessary to enable it to attain the object for which it was created. For instance, it might be necessary for such a corporation to make advances in the nature of a loan, to enable a contractor to construct their works; or it might be very necessary for such a corporation to procure an additional supply of water, and a loan of money to another water company who may be engaged in construcing ditches which will bring such additional supply may be the direct and necessary means to attain that object. So, too, it might become necessary for a corporation engaged in a large enterprise—such as the construction of large canals, railroads, turnpike roads, and the like—to borrow money in large sums; and in order to obtain the money on favorable terms and at a low rate of interest, it might be necessary to borrow it upon long time, providing a sinking fund for its repayment, by setting apart a certain portion of the corporate revenues, to be loaned out on interest, suffering the principal and interest to accumulate to an amount sufficient to repay the borrowed money when due. Such is the usual mode of conducting the business of corporations of that character; and there can be no objection to it, so long as the legitimate business of the corporation is not changed into that of a Loan Company. So long as the loans are a mere incident to the exercise of its legiti-

mate powers, they are rightful and valid.  So, numerous other cases of a like character might be suggested, where loans by a corporation might be very proper and necessary in conducting its business operations ; and if all corporations are to be considered as absolutely prohibited, or not permitted to make any loan of money except in the few classes of corporations where it is expressly allowed by the statute, and all such contracts are to be held void, a result would be produced which certainly never was intended by the Legislature, nor is it sustained by the rules of law.

A corporation had power to insure lives and grant annuities, and it was held that, as it must have funds to apply to those purposes, it might loan its money, and the loan by it would be presumed to have been made in the ordinary course of its business, and therefore valid, although it had no express power to loan money. The authority to loan money was upheld as an incident to the other powers conferred by the charter.  (*Farmers' L. & T. Co.* v. *Clowes*, 4 Edw. Ch. 575; 3 Comstock, 470 ; *Farmers' L. & T. Co.* v. ———, 3 Sandf. Ch. 339.)

So, too, an insurance company was incorporated without any special provision in relation to the mode of investing its capital, and it was held that it had the power to invest the whole or any part of its capital by way of loans on bond and mortgage, and to reinvest it in the same way whenever it should become necessary or convenient to do so.   (*Mann* v. *Eckford*, 15 Wend. 512.)

Where a bank was authorized to take mortgages in security for debts *previously* contracted, it was held that, if the loan and mortgage were concurrent acts, it was not a violation of the restraining clause of the statute.  (*Silver Lake Bank* v. *North*, 4 J. Ch. 370 ; *Baird* v. *The Bank of Washington*, 11 S. & R. 411.)

A plank road company was not authorized to loan money, but if necessary it can legally loan a sum of money to one of its contractors to enable him to build a portion of the road.  (*Madison, etc., Plank Road Co.* v. *Watertown Plank Road Co.*, 3 Wis. 173.)

A corporation was prohibited from dealing in goods, wares, and merchandise : *held*, that a loan made, secured by a quantity of cotton, which was to be shipped and sold, and the proceeds credited to the debtor on the loan, was not a violation of the charter.  (*Bates*

v. *State Bank*, 2 Ala. 465.)    So, too, a sale by a bank of a quantity of butter which it had taken in settlement of a debt, was deemed no violation of a similar clause in its charter. (*Sacketts Harbor Bank* v. *Lewis County Bank*, 11 Barb. 213.)    A glass company, not authorized to sell goods generally, sold goods to one in their service, and it was held that the Legislature did not intend to prohibit a supply of goods to those employed in the manufactory, and that the corporation might recover for them. (*Chester Glass Co.* v. *Dewey*, 16 Mass. 102.)    Numerous other cases might be quoted establishing the same principle.

Again, in numerous cases it has been held, that a contract made by a corporation which is not authorized by its charter, is not to be held void, and that a defendant sued thereon cannot refuse payment; but the Legislature may inquire into any violation of the charter, or the Government may institute suit for that purpose. The investigation must be in a direct proceeding instituted by the Government for that purpose, and it cannot be had in a collateral way by individuals. (*The Grand Gulf Bank* v. *Archer*, 8 S. & M. 151, 173; *Wade* v. *American Colonization Society*, 7 Id. 663; *Bank of Port Gibson* v. *Nevitt*, 6 Id. 513; *Chester Glass Co.* v. *Dewey*, 16 Mass. 102; *Moss* v. *Rossie L. M. Co.*, 5 Hill, 140; *The Banks* v. *Poitiaux*, 3 Rand, 142, 146; *Vidal* v. *Girard's Executors*, 2 How., U. S., 191; *Fleckner* v. *U. S. Bank*, 8 Wheat. 355; *Natoma W. & M. Co.* v. *Clarkin*, 14 Cal. 552.)

This objection to the right of the plaintiff to enforce this contract is therefore overruled.

The mortgage in this case is of a certain sluice or flume extending from Murphy's Flat to a point below, on Angel's Creek, near the suspension flume of Emory & Co., together with the water passing through the flume and the waters of Murphy's Flat and Angel's Creek, "and as well the said sluice and flume when completed, and all and every part thereof, and so much thereof as is now completed, and all rights, benefits, and privileges which may accrue to the said party of the first part upon the completion thereof." It was evidently the intention of the parties that the mortgage should cover and include the whole sluice and flume, as well that which was then completed as that portion then unfinished

and which might thereafter be completed.    The appellant, Traver, who is a subsequent mortgagee, contends that the mortgagor could only mortgage the part then completed, and that the decree of foreclosure is erroneous, as it includes the whole flume, which, since the date of the mortgage, has been completed, and that it should be limited to that portion only which was finished at the date of the mortgage.    This objection to the decree is not valid.    The mortgage includes, as we have shown, the uncompleted, as well as the completed portions of the flume, and is equally valid as against the former as the latter.    The property mortgaged was in the nature of real estate, and the mortgage, without any special provision, would include all improvements or fixtures then on the line located for the flume, as well as those which might thereafter be put thereon. (*Ferguson* v. *Miller*, 6 Cal. 402; *Soule* v. *Dawes*, 7 Id. 575; *Sands* v. *Pfeiffer*, 10 Id. 258.)

The last objection is, that the decree does not make any provision for paying the overplus of the proceeds of the sale of the mortgaged property, if any there should be, to Traver, the subsequent mortgagee.    This objection is well taken; but as this Court has full power to modify the decree in this respect, there is no necessity for reversing the judgment on that ground.

It is therefore ordered, adjudged, and decreed, that the judgment rendered by the District Court in this action be and the same is hereby amended by adding the following clause: "And the surplus money of the proceeds of said sale, if any there should be after paying the said indebtedness due the said plaintiff and said costs, shall be applied to the payment of the indebtedness due the said defendant, P. L. Traver, upon his mortgage upon said premises, and the remainder, if any, paid to the said Murphy's Flat Fluming Company."

And the judgment as thus amended is affirmed.

On petition for rehearing, the following opinion was delivered by CROCKER, J.—NORTON, J. concurring.

Some corrections of our former opinion are necessary, and a more full statement of our views upon one point may be proper. In the former opinion it is stated that in the absence of a direct

agreement to pay the money specified in the mortgage, the mortgagee can have no personal judgment against the mortgagor. That was a point not necessary to be determined in this case, and should have been omitted, as it was not fully discussed by the parties in their briefs. The question whether an action to foreclose a mortgage is barred when the debt it was given to secure is barred, should properly have been more fully explained.

In most cases, the debt secured by a mortgage is evidenced by a writing in some form, either by a covenant or agreement to pay it in the mortgage, or by some independent written contract, such as a note, bond, or agreement. In such cases the same clause in the Statute of Limitations, fixing four years as the period of time which will bar the demand, applies to both the debt and the mortgage, and thus expressions are found in some cases of that character, to the effect that the mortgage is barred by the same lapse of time as the debt, which is correct when applied to cases where the debt and the mortgage are both evidenced by writing. In the present case, however, it appears that the debt is not evidenced by a written contract, either in the mortgage, or by a separate instrument. The Statute of Limitations does not operate as a payment or discharge of the debt, and the mortgagee still has the right to enforce any right of action arising out of the contract of the mortgagor, not barred by the Statute of Limitations. In this case his right to a personal judgment against the mortgagor is barred by the statute, the contract to pay the debt not being in writing, and the action not having been commenced within two years from the time the cause of action accrued. But the debt itself not being in fact paid or satisfied, and the contract, so far as it relates to the lien upon the property, being in writing, and not barred by the Statute of Limitations relating to written contracts, the mortgagee has a right to enforce the right of action against the mortgaged property, because the action, to that extent, is " upon a contract, obligation, and liability, founded upon an instrument of writing." This right of action is not therefore barred until the expiration of four years from the time the cause of action accrued, and the action in this case having been brought within the four years, it is not barred by the statute.

The rehearing is denied.