THE SACKET'S HARBOR BANK *vs.* THE PRESIDENT, ETC. OF
THE LEWIS COUNTY BANK.

The sale, by a bank, of a quantity of butter, which it had received in settlement of a debt due to it, is no violation of the provision in its charter, that it shall not directly or indirectly deal or trade in buying or selling any goods, wares, merchandise or commodities whatsoever, unless in selling the same when truly pledged by way of security for debts due to the said corporation.

And the purchase of the butter, by another bank, having a similar restrictive clause in its charter, it appearing to be an isolated transaction of buying on the part of such bank, is not within the restriction which prohibits dealing or trading in buying or selling any goods, &c., but is a lawful transaction.

THIS was an action brought by the plaintiffs against the defendants on their guaranty, in writing, of certain inland bills of exchange, therein specified, amounting to $19,012,69, with all damages and costs that might arise or accrue by reason of the non-payment by the acceptors, or drawers, or indorsers, and waiving notice of demand and protest on any or all of said bills. The declaration also contained counts for goods, wares and merchandise, sold by the plaintiffs to the defendants, to the amount of $25,000 ; the usual money counts, to the same amount in each, and also a count on an *insimul computassent.* To this declaration the defendants pleaded the general issue. The cause was tried at the New-York circuit in May, 1848, before H. P. Edwards, circuit judge, and a jury. On the trial the plaintiffs proved, by the cashier of the defendants, that the guaranty upon which the suit was brought, was executed by John W. Martin, who was at the time president of the Lewis County Bank. They also proved that the guaranty was in March, 1842, and that previously, in the fall of 1839, the board of directors of the said Lewis County Bank passed a resolution that the president be authorized and empowered to guaranty and indorse any notes, bills of exchange, or other evidences of debt which that bank might hold, and negotiate the same for the benefit of that institution. The plaintiffs also proved, that in March, 1842, in order to secure a debt then due to them by a mercantile firm in the city of New-York, they were obliged to

take a quantity of butter to the amount of upwards of $10,000; that they sold this butter to the defendants, which, together with the sum of $9,000 in cash paid by the plaintiffs, at that time, to the defendants, formed the consideration for the bills of exchange so sold by the defendants to the plaintiffs; and the payment whereof was so guaranteed as aforesaid. The plaintiffs also proved that the bills of exchange were not paid at maturity; excepting the three first mentioned in the guaranty, and amounting to $7,012,69, which they admitted were paid when due. And they claimed to recover, either on the counts upon the guaranty, or on the common counts, the amount due on the other bills of exchange, or the balance of the aggregate of the said $9,000 cash advanced, and of the amount of said butter sold at the agreed prices, deducting therefrom the amount of said three drafts, which were admitted to be paid. And the plaintiffs having rested, the defendants moved for a nonsuit; and the justice who tried the cause decided that the contract between the plaintiffs and defendants, (out of which the guaranty arose,) being in part for the sale and purchase of butter, was void; and that the plaintiffs could not recover on said guaranty, and could not recover for the price of said butter or any part thereof; and he ordered the plaintiffs to be nonsuited. The plaintiffs excepted, and filed a bill of exceptions.

*C. P. Kirkland*, for the plaintiffs.

*H. W. Robinson*, for the defendants.

*By the Court*, KING, J. The 5th section of the plaintiff's charter provides that said corporation shall not, directly or indirectly, *deal* or *trade* in buying or selling any goods, wares, merchandise, or commodities whatsoever, unless in selling the same, when truly pledged by way of security for debts due to the said corporation. The charter of the defendants contains a similar provision. It appears from the case, that the plaintiffs obtained the butter—the selling of which is held to constitute the illegality of their contract with the defendants—in settlement of a debt

due them by Gordon & Brown; and thus, it seems to me, they had, even within the terms of their charter, power to sell it.

As to the incapacity of the defendants to buy. The object appears to have been to borrow from the plaintiffs, money for the defendants' purposes. The plaintiffs had some money and some butter which they had a right to sell. The defendants agree to take the butter at its market price, and also money of the plaintiffs, and repay them at a future day, the amount of money loaned, and the price of the butter.

It appears to have been an isolated transaction of buying on the part of the defendants, and of selling on the part of the plaintiffs, and hardly within the restriction of the charter which prohibits dealing or trading in, buying or selling goods, &c.; and moreover, a lawful transaction, within the principle of *Potter* v. *The Bank of Ithaca,* (5 *Hill,* 490,) where, under an express direction that the discount operations of the bank should be conducted at Ithaca, and not elsewhere, a single discount made within the city of New-York, was not considered within the prohibition ; and to the same principle see *Suydam* v. *The Morris Canal and Banking Company,* (5 *Hill,* 491, *note* (*a*); *S. C.* 6 *Hill,* 217, *in error.*)

For this reason it seems to me, the contract between the plaintiffs and the defendants was not void, and the nonsuit should not have been allowed ; and therefore, that the motion for a new trial should be granted.

[NEW-YORK GENERAL TERM, June 14, 1851. *Edmonds, Edwards* and *King,* Justices.]