## ARGENTI v. CITY OF SAN FRANCISCO.

THE charter of the city of San Francisco of 1851, gave the city power to open streets and alleys and to alter and improve the same, and this power includes authority to enter into contracts for that purpose, binding upon the city. And this, notwithstanding section two, article five of that charter, providing that the adjacent property shall bear two-thirds of the expense of every improvement. This section simply made the property holders liable to the city for the two-

thirds, and the remedy of the city was by assessments on the property, and such assessments, when collected, go into the city treasury, to be used as the city sees fit.—COPE, J.

The provision in section five, article three of the Charter of 1851, as to not creating liabilities beyond $50,000, over and above the annual revenue of the city, etc., is directory, and not a limitation upon the power of the city to contract debts. *Id.*

The legal effect of this provision is entirely different from the clause in the eighth article of our Constitution, prohibiting the Legislature from creating debts against the State. *Id.*

As to the contracts of corporations, the rule is, that where the question is one of capacity or authority to contract, arising either on a question of regularity of organization, or of power conferred by the Charter, a party who has had the benefit of the contract cannot, in an action founded upon it, contest its validity. And this rule applies with equal force to all corporations, public or private. *Id.*

Contracts of corporations, whether public or private, stand on the same footing with the contracts of natural persons, and depend on the same circumstances for their validity and effect. The doctrine of ratification and estoppel is as applicable to corporations as to individuals, and the former are bound by the acts of their agents in the same manner, and to the same extent, as the latter. *Id.*

*Gas Co.* v. *City of San Francisco,* (9 Cal. 453) that the city may be made liable on implied contracts, affirmed. *Id.*

Cases as to the liability of municipal corporations on contracts, express or implied, just as individuals, are liable, cited and commented on. *Id.*

Cases opposed, cited and commented on. *Id.*

The general doctrine that corporations possess only the powers specifically granted, and such as are necessary to carry into effect the powers so granted, admitted. *Id.*

*Seale* v. *City of San Francisco* (July term, 1858) ; *Phelan* v. *City of San Francisco,* (6 Cal. 531) ; *Lucas, Turner & Co.* v. *City of San Francisco,* (7 Cal. 463 ); *Holland* v. *City of San Francisco,* (7 Cal. 361) commented on. *Id.*

As a rule, the powers of corporations, municipal or others, must be exercised in the mode pointed out by the charter. But even a want of authority is not, in all cases, a sufficient test of the exemption of the corporation from liability in matters of contract. An executory contract, made without authority, cannot be enforced ; but where the contract has been executed, and the corporation has received the benefit of it, the law interposes an estoppel, and will not permit the validity of the contract to be questioned. *Id.*

Plaintiff, by virtue of contracts entered into with an officer of the city of San Francisco, which contracts were executed by such officer in his official capacity, made valuable and permanent improvements to the city, for the exclusive benefit of it and its inhabitants ; such improvements were made under the immediate supervision of an officer of the city, and when completed, were approved of and received by him, on behalf of the city ; plaintiff, in making the improvements, relied on the validity of the contracts and the obligation of the city to pay, as therein provided ; the city authorities were fully informed of

these facts, took no steps to repudiate the contracts, or to inform plaintiff as to her disposition to pay: *Held*, that plaintiff can recover on the contracts, although there is no evidence that the officer signing them was expressly authorized; that the silence of the city authorities, under the circumstances, was equivalent to a direct sanction of the acts of such officer, and estops the city from denying his authority; that the city having acquiesced in the contracts from the commencement to the completion of the improvements, never questioning the validity of the contracts until she had received all the benefit to be had from their performance, it would be a fraud on plaintiff to permit her now to repudiate them. *Id.*

The Mayor and Controller of said city having drawn warrants on the Treasurer thereof, payable out of the street assessment fund, in favor of plaintiff, for the improvements so made under said contracts: *Held*, that plaintiff cannot recover on the warrants; that being payable out of a particular fund, they are neither bills of exchange nor promissory notes, and that the Treasurer must pay from that fund, and no other. *Id.*

Nor can plaintiff recover on some of the warrants so drawn, for the further reason, that they do not specify the appropriations under which they were issued, nor the date of the ordinances making the same, as is required by the eighth section of the third article of the city charter; and they would not constitute any authority to the Treasurer to pay them, even if there were funds in the treasury specially appropriated for their payment.—FIELD, C. J.

*Seale* v. *The City of San Francisco* (July term, 1858) never became authority, because, a rehearing having been granted, the opinion first delivered, not having been adhered to after the re-argument, falls. *Id.*

The Common Council of the city of San Francisco passed an ordinance authorizing the Street Commissioner to advertise for proposals to grade, plank and sewer a portion of Mission street, in said city, "the same to be paid for by the property holders adjacent * * the proposals to be opened and awarded by the Street Commissioner, with the Committees on Streets from both Boards of Aldermen." This ordinance was published for ten days successively in a daily newspaper of the city, and the advertisement required was made in like manner for the same period. Proposals, based upon certain specifications, were received under the ordinance, and opened by the Committees of the two Boards and the Commissioner, and the work awarded to B. Subsequently, an instrument was executed by B., as contractor, and by the Street Commissioner, purporting to act in the name of the city, setting forth the acceptance by the city of B.'s proposal, and an agreement by her to pay him for the work at certain designated rates, and an agreement on his part to do the work to the satisfaction of the city and the Street Commissioner. B. began the work, and afterwards transferred his contract and his interest therein to plaintiff, who completed the work in the best manner, and to the satisfaction of the city and the Street Commissioner and the city. The work was measured as it progressed, by the city's Engineer, who duly certified to the accounts for the same, which accounts were duly audited, and upon them warrants were drawn by the Controller, by authority of the city, and delivered to plaintiff. The warrants were presented to the Treasurer, and payment demanded and

refused, on the ground that there were no funds in the treasury applicable to them. Previous to the demand, assessments had been duly levied by the city upon the property adjacent to the improvements, to meet their expenses, and these assessments had been collected by the collector of street assessments, and by him paid into the city treasury. Plaintiff sues the city, as liable either on the express contract, or upon the warrants, or upon implied contracts, for the services rendered and materials furnished, or for money received by defendant to his use: *Held*, that, as under the charter, the city had authority to order the improvements in question, the acceptance of the proposals of B. by the Street Commissioner and the Committees of the two Boards, converted what were previously mere propositions on the part of the city, into contracts, perfect in all their parts, binding alike upon the city and the contractor. *Id.*

*Held*, further, that the city is primarily liable; that she, and not the contractor, must look to the property holders adjacent to the improvements, for the necessary expenses; that the property holders are not parties to the contracts; that the city must levy and collect the assessments; that the contractor has no claim upon the property or the property holders, but must look alone to the city; that the clause in the ordinance as to how the improvements shall be paid for, is only a designation of the sources upon which the city relies for payment. *Id.*

In this case, the city having discharged the assessments, by receiving in payment thereof outstanding warrants, she is primarily liable to plaintiff as for moneys received to his use, even on the theory that she acted simply as the agent of the plaintiff in collecting the assessments. *Id.*

The city would not be liable independent of the contract made by her acceptance of the proposals of the contractor. A municipal corporation can only act in the cases and in the mode prescribed by its charter, and for street improvements of a local nature, express contracts, authorized by ordinance, are necessary to create a liability. The doctrine of liability as upon implied contracts, has no application to cases of this character. *Id.*

That doctrine applies to cases where money or other property of a party is received under such circumstances that the general law, independent of express contract, imposes upon the city the obligation to do justice with respect to the same. *Id.*

If the city obtain the money of another by mistake, or without authority of law, it is her duty to refund it, not from any contract entered into by her upon the subject, but from the general obligation to do justice, which binds all persons, whether natural or artificial. If the city obtain other property which does not belong to her, it is her duty to restore it, or if used by her, to render an equivalent to the true owner, from the like general obligation. *Id.*

In these cases the city does not make any promise, but the law implies one, and it is no answer to a claim resting upon such implied contract, to say no ordinance has been passed, or that the liability of the city is void when it exceeds the limitation of $50,000 prescribed by the charter. *Id.*

To fix the liability of the city in respect to money or other property, the money must have gone into her treasury or been appropriated by her, and the property must have been used by her, or be under her control. *Id.*

In case of services rendered, the acceptance of the services must be evidenced by ordinance to that effect. Their acceptance by the city, and the consequent obligation to pay for them, cannot be asserted in any other way. If not originally authorized, no liability can attach upon any ground of implied contract. *Id.*

The improvements in this case—being to particular streets—were local in their character, and though to some extent of general benefit, yet were chiefly for the benefit and advantage of the immediate neighborhood. The advantages resulting from them do not constitute that kind of general advantage to the city, from the existence of which any liability to pay for the same can be inferred. The general doctrine that when one takes a benefit which is the result of another's labor he is bound to pay for the same, does not apply to cases of this kind. The benefit is immediate to the adjacent property holders, and only indirectly to the city at large. *Id.*

As a general rule, a city is only liable upon express contracts authorized by ordinance. The exceptions relate to liabilities from the use of money, or other property, which does not belong to her, and to liabilities springing from neglect of duties imposed by her charter, from which parties are enjoined. *Id.*

Even these exceptions are limited in many instances, as where the property or money is received in disregard of positive prohibitions in her charter—as for instance, upon the issuance of bills of credit. *Id.*

APPEAL from the Fourth District.

The facts appear in the opinions rendered. Plaintiff had judgment for the full amount of the warrants. Defendant appeals.

*F. M. Haight,* for Appellant.

I. There was no contract. Proposals were made and accepted, and a contract executed by the Street Commissioner. The Common Council took no action; passed no ordinance authorizing the execution of any contract. The delegated power to receive proposals and award or accept them by the committees and the Street Commissioner, was preparatory only to the making of a contract. It was necessary to ratify these doings by ordinance. The Common Council could not make a contract binding the city to pay for the entire work. Article five of the Charter of 1851 forbids that the city shall pay more than one-third.

II. If the transactions between the city and the contractors make out any contract at all, it was a contract to do the work at the entire expense of the property holders, the city not to pay any of it. And there being no count in the complaint against the city for not assessing and collecting from the property holders, and no count for not paying

Argenti *v.* City of San Francisco.

over money so collected, the suit fails, unless an express or implied contract be made out. The duty of the city was confined to a mere agency to carry out certain public objects in the mode and under the conditions prescribed. The contractor, when he made proposals, knew who were to pay, and was aware of the means provided.

As to ratification of the alleged contract by acts *in pais*, it is impossible. A municipal corporation, in exercising its public governmental or police powers, can only contract for the objects and in the mode pointed out by its charter.

III. No action can be sustained on the warrants, for the reasons stated by Judge Burnett, in his opinion in *Lucas, Turner & Co.* v. *The City of San Francisco*, (7 Cal. 475).

IV. The city is not liable, because the contract is in violation of the fifth section of article three of the city charter, limiting the capacity of the city to create debts. Nor can the city be charged as having received money on the assessments—for warrants on the street assessment fund were received, not money. This prohibition in the charter is to be construed as has been the eighth article of our Constitution.

For authorities on the whole case, see Smith's Com. sec. 677; Bac. Abr. J. Corporations, D; 2 Kent's Com. 298, notes; *Halstead* v. *Mayor of New York*, 3 Comst. 430; 1 Duer, 505; 4 Sandf. 421; *New London* v. *Brainard*, 22 Conn. 552–4; *Lake* v. *Trustees of Williamsburgh*, 4 Denio, 520; *Mc Culloch* v. *Brooklyn*, 23 Wend. 458.

*J. A. McDougall,* for Respondent.

I. The Common Council, by ordinance, directed the Street Commissioner to advertise their intention to make the improvements in question; and that one-third of the property holders not protesting, the Street Commissioner should advertise for proposals; the proposals to be opened and the contract awarded to the lowest bidder. Advertisement was made—there was no protest. Proposals were received, opened, and the contract awarded—as in complaint alleged. The Street Commissioner executed the contract.

It is said, in the first place, notwithstanding the contract was awarded in strict pursuance of the ordinance, that these proceedings must be ratified by an express legislative act; and that the award of the contract gives the bidder no contract rights, but is merely preliminary to the consideration of the question of contract by the Common Council. The answer to this is, that the committee named in the ordinance, were

*Argenti v. City of San Francisco.*

authorized to accept the proposals on behalf of the city — they did accept the proposals, as alleged, and the formal contract is the embodiment of the proposals and acceptance, giving them form, but not vitality. For this purpose the Street Commissioner was the proper officer under the charter and ordinances of the city.

II.  Corporations cannot generally go beyond the power conferred by their charters.  But for the irregular exercise of its power, a corporation cannot take greater advantage of its own error, than can a private person.

III.  The city had full power to make the contracts in question. There is no privity between the contractor and the property, or the property owner.  The city, by virtue of her legislative power, and by official acts, may charge the property by assessment, and may enforce the payment—over these acts and proceedings the contractor has no power.

It is a general rule of municipal law, that this class of improvements to streets—the benefits of which are more local than general—shall not be entirely borne by the general public, but by those benefited, in proportion to their interests.  This rule makes the distinction between assessments and taxes; yet all the business and incidents of assessments are as much public, as the business and incidents of taxation.  It is the business of the public to assess, levy and collect assessments, as well as taxes; and the contractor, for whose labor and materials the assessment is made, is as foreign to the proceedings and rights incident to an assessment, as a salaried officer is to the proceedings under our revenue laws. (For authority, see City Charter Act, art. 3, sec. 13; art. 5, sec. 5; art. 6, sec. 7; *Brady* v. *City of Brooklyn*, 1 Barb. 590.)

IV.  The contract, if in any respect irregular, has been ratified by the city.  1. By levying assessments to meet the expenses, and collecting and receiving the assessments.  2. By standing by and seeing the work done, and by accepting it when done.  3. By passing an ordinance for settlement with the contractor.  4. By actual settlement, and issuance of warrants for the amount due on the contract.  5. By assuming, by ordinance, to receive the amount chargeable against the property in city indebtedness, and by so receiving the same, in fact.  (*Moodaly* v. *The East Indies Co.* 1 Brown Ch. 469; *Lloyd* v. *The Mayor, &c.* 1 Seld. 374; *City of Dayton* v. *Pease*, 4 Ohio State R. 100; *Ross* v. *The City of Madison*, 1 Carter, 283; *McCombs* v. *The Town of Akron*, 15 Ohio, 479; *Alleghany City* v. *McClarkan*, 14 Penn. 82; *Delafield*

v. *The State of Illinois*, 26 Wend. 225 ; *De Grave* v. *The Mayor and Corporation of Monmouth*, 4 C. & P. 111 (19 Eng. C. L. 300) ; *Bank of U. S.* v. *Dandridge*, 12 Wheat. 64 ; *Proprietor's Canal Bridge* v. *Gordon*, 1 Pick. 304 ; *Underwood* v. *Newport Lyceum*, 5 B. Mon. 130.

V. An action lies on the warrants. They are notes or bills, and negotiable as such. The fact that they were payable out of a particular fund, at most, only shows that the holder was entitled to receive his money out of that fund ; but if the city was liable, the designation of the fund does not show that no debt was due. The warrants import a direct liability on the part of the city ; First, because they presume the existence of a fraud out of which payment may be made ; indeed, the city would be estopped to deny funds ; the warrants drawn by herself on herself, are equivalent to an order drawn and accepted. Second, the city would be liable if there were no funds, because if a man gives an order payable out of a fund, he is not discharged because of his own fraud or mistake in not having funds to meet it. Third, the warrants are at least equal to a certificate of settlement, and are *prima facie* evidence of indebtedness.

VI. The fifth section of the third article of the charter is directory. (5 Hill, 137 ; 7 Cow. 485 ; 5 Wheat. 326.)

Cope, J. delivered the following opinion—Field, C. J. concurring in the judgment only.

This is an action to recover a sum of money alleged to be due the plaintiff for grading and planking certain streets within the corporate limits of the city of San Francisco. The plaintiff relies for a recovery : First, upon an implied contract for work, labor and materials ; Second, upon certain express contracts under which the work and labor were performed and the materials furnished ; and, Third, upon various warrants drawn by the Mayor and Controller upon the Treasurer of the city. The questions in the case relate to the right of the plaintiff to recover in any form.

There are two objections which it is proper to dispose of before proceeding to consider the other questions in the case. The first is, that the power of the city to contract a debt of this character, was limited by the charter to one-third of the cost of the improvements ; and the second is, that the indebtedness of the city already exceeded the sum of $50,000, over and above its annual revenue.

In respect to the first objection, the charter vested in the Common

Council power to open streets and alleys, and to alter and improve the same, but provided that at least two-thirds of the expense of every improvement should be borne by the property adjacent.    (Charter 1851, art. 5, sec. 2.)    We see nothing in this provision to justify the construction contended for; and, when taken in connection with other provisions of the charter, it is clear that such a construction is entirely inadmissible, and would lead to the grossest and most palpable injustice.    The power to improve the streets necessarily included the authority to enter into a contract for that purpose, and it would be absurd to say that the city could not bind itself by a contract which it was legally authorized to make.    It is certain that such a contract could not be treated as the contract of the property holders, and an action maintained upon it as against them.    Their liability was exclusively to the city, and the manner of its enforcement was pointed out by the charter. The remedy was limited to assessments upon the property itself.  These assessments were to be levied and collected by the city, and it was evidently intended that the money, when received, should be paid into the city treasury.    No provision was made for any other disposition of it, and no restriction was placed upon the right of the city to use it for any purpose whatever.

In support of this objection, the counsel for the city relies upon the case of *McCullough* v. *The Mayor*, etc., *of Brooklyn* (23 Wend. 458). The question there was, whether the city of Brooklyn was liable for certain damages, which had been assessed in favor of the plaintiff in contemplation of the opening of a street upon his land.   By the terms of the charter, the persons to be benefited by the improvement were to pay the damages; and these persons were required to deposit the amount with the Treasurer of the city, whose duty it was to pay it over to the party entitled to receive it.   The city had not taken possession of the property, and could not do so until the damages were paid. There was no contract in the case, and no question in relation to the power of the city.    The damages were to be paid in a particular manner, and it was held that the mere fact that an assessment had been made, did not render the city liable.   We do not question the authority of that case; but in what respect it resembles the case at bar we are unable to perceive.    Here the city did not occupy the position of an agent.    The proceeds of assessments were to be paid into the treasury, and when paid in, became the property of the city.

In respect to the second objection, it was provided by the charter

that the Common Council should not create, nor permit to accrue, any debts or liabilities which, in the aggregate, with all former debts or liabilities, should exceed the sum of $50,000, over and above the annual revenue of the city, except in certain specified cases, and then only in a particular manner. We regard this provision as directory to the Common Council, and not as a limitation upon the power of the city. It was too indefinite and uncertain to admit of any other construction. Of course, the amount of the annual revenue of the city was incapable of ascertainment in advance of its collection, and it could not have been intended that a debt contracted by the city should be valid or invalid as the revenue for the year might exceed or fall short of a particular amount. No consequence was attached to a violation of the charter in this respect, and the revenue was a matter so completely within the control of the city, that we must regard the provision as directory to the Common Council, or conclude that it was the intention of the Legislature to furnish the city with the means of avoiding its debts and liabilities at pleasure. We are not disposed to adopt an interpretation so disparaging to the integrity of the Legislature.

It is contended that, in legal effect, this provision of the charter, and the clause in the Constitution prohibiting the Legislature from creating debts against the State, are precisely similar. The difference is so palpable that the argument is without the semblance of plausibility. The limit prescribed by the Constitution is fixed, certain, and definite. To determine when this limit has been reached, it is only necessary to ascertain whether the indebtedness of the State amounts to $300,000— a fact the existence or non-existence of which is at least susceptible of ascertainment. The limit prescribed by the charter was indefinite, and entirely uncertain. When this limit had been reached, it was impossible to ascertain. The amount of the annual revenue of the city depended, of course, upon the productiveness of the various sources from which its revenue was derived, and until the expiration of the year, and the revenue had been received, its amount could only have been the subject of surmise and conjecture. We cannot suppose that a provision so entirely uncertain was intended by the Legislature to operate as a limitation upon the power of the city.

But even if we are mistaken in our construction of the charter, there is still a clear and conclusive answer to both of these objections. It is well settled in relation to the contracts of corporations, that where the question is one of capacity or authority to contract, arising either on a

question of regularity of organization, or of power conferred by the charter, a party who has had the benefit of the contract cannot be permitted, in an action founded upon it, to question its validity. "It would be in the highest degree inequitable and unjust," says Mr. Sedgwick, " to permit the defendant to repudiate a contract, the fruits of which he retains." (Sedg. on Con. and Stat. Law, 90.) In *Silver Lake Bank* v. *North*, (4 John. Ch. R. 370) where it was alleged that a foreign corporation had exceeded its power in making a loan, Chancellor Kent said, "It would rather belong to the government of Pennsylvania to exact a forfeiture of their charter, than for this Court, in this collateral way, to decide a question of *misuser* by setting aside a just and *bona fide* contract." In *The State of Indiana* v. *Woram*, (6 Hill, 37) it was contended that the Staten Island Whaling Co. had no power, by its charter, to purchase or deal in State bonds; and Mr. Justice Bronson, in delivering the opinion of the Court, said : " I agree with the counsel for the defendant that this company had no authority to purchase or deal in these bonds. But since the decision in *Moss* v. *The Rossie Lead Mining Co.* (5 Hill, 137) I do not see that a corporation can ever avoid its obligation on the ground that it was given for property which the corporation was not authorized to purchase. And if the company was bound, I see no reason why the defendant should not also be bound by the contract." In *The Steam Navigation Co.* v. *Weed*, (17 Barb. 378) Mr. Justice Parker, in delivering the opinion of the Court, said : "I am happy to come to the conclusion that the law will not sustain this most unconscionable defense. It ill becomes the defendant to borrow from the plaintiff $1,000 for a single day, to relieve his immediate necessities, and then to turn round and say, 'I will not return you this money, because you had no power, by your charter, to lend it.' We shall lose our respect for the law, when it so far loses its character for justice as to sanction the defense here attempted." ( See also *Chester Glass Co.* v. *Dewey*, 16 Mass. 94; *Mc Cutcheon* v. *Steamboat Co.* 13 Penn. 13 ; *Sackett's Harbor Bank* v. *Lewis County Bank*, 11 Barb. 213.) We shall show that this rule applies with equal force to all corporations, whether public or private.

Having disposed of the objections to a recovery upon the ground of a want of authority in the city, we now proceed to examine the question of the liability of the city independent of these objections. It is well settled that the contracts of corporations stand upon the same footing as those of natural persons, and depend upon the same circumstances

for their validity and effect. The doctrine of ratification and estoppel is as applicable to corporations as to individuals, and the former are bound by the acts of their agents in the same manner and to the same extent, as the latter. There is no difference in this respect between public and private corporations; for, in matters of contract, a public corporation is regarded merely as a legal individual, and treated in all respects as a private person.

Angell and Ames, in their work on Corporations, (sec. 219) say: "The old rule of the common law undoubtedly was, that corporations aggregate could contract, or appoint special agents for that purpose, or any other, except for service of the most inferior and ordinary nature, only by deed. In England, this rule has, in modern times, been greatly though gradually relaxed; and in our country, where private corporations of this kind, for every laudable object, have been multiplied beyond any former example, on account of the inconvenience and injustice which must, in practice, result from its technical strictness, the rule has, as a general proposition, been completely done away. The course of modern decisions seems to place corporations, with regard to their mode of appointing agents, and making contracts in general, upon the same footing with natural persons." The same authors (sec. 238) say: "It having been established that corporations might contract otherwise than by their corporate seals—that they might make parol promises, either by vote or through their authorized agents, no reason could be found in technical principle or substantial justice, why they should not be subject and entitled to the same presumptions as natural persons." In speaking of municipal corporations, they say: "If the powers conferred be granted for public purposes exclusively, they belong to the corporate body in its public and municipal character; but if for purposes of private advantage and emolument, though the public derive a common benefit therefrom, the corporation, *quoad hoc*, is to be regarded as a private company." (Id. sec. 38.) And they add, in a note to the same section, that "it is upon the like distinction that municipal corporations, in their private character, as owners and occupiers of houses and lands, are regarded in the same light, and dealt with accordingly." The same distinction exists in reference to contracts, in respect to which all corporations stand upon the same footing as natural persons.

*Seagraves* v. *The City of Alton* (13 Ill. 366) is a strong case upon the question of the liability of a municipal corporation upon an implied

contract. The action was for necessaries furnished a pauper, and the charter required the Common Council to provide for the support of all paupers within the limits of the city. Treat, C. J., in delivering the opinion of the Court, said: "In the present case, the evidence tended to the conclusion that Reeves was a pauper, and properly chargeable to the corporation. It also clearly appeared that the plaintiff, with whom Reeves resided, made repeated applications to the city authorities for relief, which was refused. If Reeves was a pauper in fact, the plaintiff, by continuing to maintain him, pursued the course that humanity prompted, and the law approved, and he ought to be remunerated." The jury had been instructed that the plaintiff could not recover unless the necessaries were furnished in pursuance of an express contract with the corporation; and it was held that this instruction was erroneous, and the judgment, which was in favor of the corporation, was reversed. This question is elaborately discussed in the opinion of Mr. Justice Field, in the case of the *Gas Company* v. *City of San Francisco,* (9 Cal. 453) and we are satisfied that the conclusion there attained is not only correct in principle, but supported by all the authorities.

In *Ross* v. *The City of Madison* ( 1 Carter, 281 ) the question was, whether the city was liable for an injury resulting from the negligence of its agents in the construction of a culvert. The culvert was constructed without express authority from the city, and it was contended that the city could not therefore be made responsible for the injury. But the Court said: "The English rule was, and still appears to be, that corporations aggregate cannot enter into contracts of an important nature, except under their common seal. But in this country it is well established that the contracts of corporations rest upon the same footing as those of natural persons, and are valid without seal, whether expressly made by the corporation, or arising by implication from the general relations of the agent towards the corporation, or from the ratification of acts done on behalf of the corporation by parties assuming to act as agents, although without sufficient authority."

In *The City of Dayton* v. *Pease* (4 Ohio, 80) the same question was involved, the injury for which the action was brought having been occasioned by the negligence and unskillfulness of an agent of the corporation. In speaking of the legal reasons upon which the liability of the corporation rested, the Court said: "The liability of a private person, under precisely such circumstances, rests upon one of the oldest and

best settled doctrines of the common law. We have again and again affirmed that the liabilities of corporations, private and municipal, are no less extensive; and that the maxim, *respondeat superior,* properly applies to them in the same manner and the same extent as in its application to the liabilities of private individuals." In reference to the double character of a municipal corporation, the Court, after stating that such a corporation was not responsible for an injury resulting from the exercise of its public, judicial, or political powers, said: "But when a municipal corporation undertakes to execute its own prescribed regulations, by constructing improvements for the especial interest or advantage of its own inhabitants, the authorities are all agreed that it is to be treated merely as a legal individual, and as such, owing all the duties to private persons, and subject to all the liabilities that pertain to private corporations or individual citizens. To this class most clearly belong the construction, repair, and maintenance of its streets."

In *Alleghany City* v. *Mc Clarken* (14 Penn. 81) the question was as to the validity of certain scrip or notes, which had been issued without express authority from the city, and in the absence of any provision in the charter authorizing their issuance. The Court said: "The object of all law is, to promote justice and fair dealing, when that can be done without violating principle. We cannot perceive that any principle is violated by holding a corporation liable for the contracts of its accredited agents, even not expressly authorized, where these contracts, for a series of times, were entered into publicly, and in such manner as, by necessity and irresistible implication, to be within the knowledge of the corporation. It was the acquiescence of the corporators, and the habit and custom of business of the corporation, which induced the public to give credit to the scrip or notes, which was evidence of contract. But when, to this circumstance, we add that the corporators themselves received the value of these notes, in the erection of improvements in the city, and enjoyed, and still enjoy the value of them, the conclusion is irresistible that the corporation ought to pay them, by the assessment of taxes on the corporators, if it has no other available means. * * * One rule of law is often met and counteracted by another of equal force, so that, although the corporators are, in general, protected from unauthorized acts of their agents, yet, at the same time, a rule of equal force requires that they should not deceive the public, or lead them to trust and confide in unauthorized acts of their agents. If they receive the avails and value of these acts, it is explicit evidence

that they consented to and authorized them. They adopt the act, and are responsible to those who, on the faith of such acquiescence and approbation, trusted their agents."

In *Underwood* v. *The Newport Lyceum* (5 B. Mon. 129) it was contended that the corporation had no power to contract the debt for which the suit was brought; but the Court said: "A corporation, as is well established by the authorities, may be made responsible in an action on the case for a tort, and even in an action of trespass, if, by its managers and authorized agents, it commands the trespass to be committed, or sanctions and approves the act when committed. If, therefore, as a corporate body, it may be made responsible for perpetrating a wrong, to the injury of others, the power to do which their charter can never be presumed to confer, much more may a corporation be rendered responsible, in damages, for a breach of their assumpsit to strangers, who may be presumed to be ignorant of the powers by which they engage their services, and induce them to expend their labor, time, and means, at their instance and for their benefit."

The doctrine laid down by these authorities has also been repeatedly recognized by the English Courts. In *Moodalay* v. *The East India Company* (1 Brown Ch. R. 469) the Master of the Rolls said: "At the outset, I thought the cases of a corporation and of an individual were different; but I am glad to have the authority of Lord Talbot, that they are not. * * * I admit that no suit will lie in this Court against a sovereign power, for anything done in that capacity, but I do not think that the East India Company is within that rule. They have rights as a sovereign power—they have also duties as individuals; if they enter into bonds in India, the sums secured may be recovered here.

So in this case, as a private company, they have entered into a private contract, to which they must be liable."

In *De Grave* v. *The Corporation of Monmouth* (19 Eng. Com. Law, C. P. 109) the question was, whether the corporation was responsible for certain weights and measures purchased by the Mayor. It was shown that they had been taken from the boxes in which they were packed, and examined at a meeting of the corporation, and that some of them had been subsequently used. It was objected, that the corporation could only bind itself by its corporate seal, but Lord Tenterden said: "I think that the examination of these weights and measures by the corporation, at the meeting in the jury-room, was exercising an act of ownership over them; and that, by so doing, the corporation have recognized the contract."

It was laid down by this Court, in *Touchard* v. *Touchard*, (5 Cal. 806) that a municipal corporation, in reference to all matters of contract, must be looked upon and treated as a private person, and its contracts construed in the same manner and with like effect as those of natural persons. And this distinction was subsequently recognized and acted upon in the case of *Holland* v. *The City of San Francisco* (7 Cal. 361). The principle upon which the distinction rests was discussed in *Bailey* v. *The Mayor, etc., of New York*, 3 Hill, 539; *Lloyd* v. *The Mayor, etc., of New York*, 1 Selden, 374; and *Milhau* v. *Sharp*, 15 Barb. 210.

We do not propose to examine all the authorities in support of the propositions we have endeavored to establish. For the benefit of those who desire to pursue the subject further, we refer to the following additional cases: *Bank of the United States* v. *Dundridge*, 12 Wheat. 64; *Delafield* v. *The State of Illinois*, 26 Wend. 192; *McComb* v. *The Town Council of Akron*, 15 Ohio, 474; *City of New York* v. *Bailey*, 2 Denio, 433; *Goodloe* v. *The City of Cincinnati*, 4 Ham. 500; *Bank of Chilicothe* v. *The Town of Chilicothe*, 7 Ohio, 358; and *Rhodes* v. *The City of Cleveland*, 10 Id. 159.

It is necessary to notice some of the authorities cited by counsel for the city, and relied upon as establishing a different doctrine in relation to the contracts of corporations.

In *Hodges* v. *The City of Buffalo* (2 Denio, 110) the question was, whether the corporation was liable for the cost of an entertainment furnished to the citizens and guests of the city, under a contract with the Common Council. Mr. Justice Jewett, who delivered the opinion of the Court, after stating certain general principles relating to the powers of corporations, proceeded to say: "The plaintiff's counsel, failing to find express authority to make expenditures for this purpose, insists that the claim can be sustained on the ground that the plaintiff, having furnished this entertainment, the corporation has received the consideration, and is bound to pay, although the engagement was made without legal authority. It is said to be analogous to a subsequent ratification by a corporation of the unauthorized act of the agent. I cannot concur in this view of the case. The doctrine referred to assumes that the principal had power to confer the requisite authority in the first instance. It cannot be maintained that a corporation can, by a subsequent ratification, make good an act of its agent which it could not have directly empowered him to do." This case may have been

correctly decided, but its authority stands upon a very doubtful footing. It is in direct conflict with two cases previously decided by the same Court: *Moss* v. *The Rossie Lead Mining Company*, (5 Hill, 137) and *The State of Indiana* v. *Woram* (6 Id. 37). Besides, the right of the plaintiff to recover did not depend upon a ratification, but upon the fact that the corporation, having made the contract, had received the benefit of it, and could not, therefore, be permitted to question its validity. But, admitting that the case was properly decided, it cannot be regarded as authority in the case at bar. The decision proceeded solely upon the ground of a want of power in the corporation, and it was inferentially admitted that if the corporation had possessed the requisite power it could have been as effectually bound by a subsequent ratification as by a valid exercise of the power in the first instance. In the present case, there is no doubt as to the existence of the power.

The case of *Halstead* v. *The Mayor, etc., of New York* (3 Com. 430) is not in point. The suit was brought to recover the amount of two drafts drawn by the defendants upon the Treasurer of the city, payment of which had been refused. The defense was that these drafts were without consideration, and upon that ground the defendants obtained a verdict. On appeal, it was held that the verdict was right, though three of the Judges, including Chief Justice Bronson, dissented.

The case of *Lake* v. *Williamsburg* (4 Denio, 520) is analogous in principle to that of *McCullough* v. *The Mayor of Brooklyn*, to which we have already referred, and was decided upon the authority of that case.

In *The City of London* v. *Brainard* (22 Conn. 552) the corporation was enjoined from paying out money for a purpose not contemplated by the charter. There was no contract in the case, and the only question was as to the validity of a voluntary appropriation of the funds of the corporation.

The other authorities referred to seem to have been cited for the purpose of showing that a corporation possesses only such powers as are specifically granted by the act of incorporation, and such as are necessary to carry into effect the powers expressly granted. This doctrine we understand to be perfectly well settled, and we have no disposition to question its correctness. The only difficulty is as to its application in particular cases, and its effect when brought in contact with other rules equally well settled.

The doctrine contended for by the counsel for the city received the

sanction of this Court in *Seale* v. *The City of San Francisco*, decided at the July term, 1858; but a rehearing having been granted in that case, it is still undetermined, and the same questions are presented to us, unembarrassed by previous decisions of the Court. In the lengthy opinion of Mr. Justice Burnett, many authorities are cited as supporting the conclusion there attained. Some of these authorities we have already noticed, and we propose, at present, only to refer to the cases emanating from this Court.

In *Phelan* v. *The County of San Francisco* (6 Cal. 531) the plaintiff had sold to the Court of Sessions, for the use of the county, a certain lot of land, for which he was to receive the sum of sixty thousand dollars. The Court of Sessions took possession of the property, and continued to manage and control it until the organization of a Board of Supervisors, when it passed into their hands, and was afterward controlled and taken care of by them. The action was brought to recover the purchase money; but it was held that the Court of Sessions had no power to make the contract, and that the whole transaction was void. It was also held that the acts of the Board of Supervisors did not amount to a ratification of the contract, so as to bind the county. "Nay, more," said the Court; "we are satisfied that a deliberative body like the Board of Supervisors, cannot be bound by acts *in pais*, but that the best and only evidence of its acts and intentions is to be drawn from the record of its proceedings." This was one of several reasons given by the Court for its decision, and we do not pretend to say that it was not of itself entirely sufficient. It was not regarded as essential to the determination of the case, and may have been stated in broader terms than the Court intended to employ. We are not required to pass upon the question of its correctness, and it is only necessary for us to say that no such rule exists in reference to the private transactions of a municipal corporation.

In *Lucas, Turner & Co.* v. *The City of San Francisco* (7 Cal. 463) the only question passed upon by the Court, was the sufficiency of a demurrer to the complaint. Mr. Justice Burnett, in delivering the opinion in the case, commenced by saying: "The decision of the Court below was given against the plaintiff, upon a demurrer to the complaint. The complaint contains nine counts, setting forth the cause of action in different forms, and the demurrer was to the whole complaint, and to each count separately, and was sustained as to all the counts. The objections raised by the demurrer can only apply to some of the counts,

and for that reason, if for no other, the judgment of the Court below must be reversed." The learned Judge then proceeded to discuss the case upon the merits, and arrived at the conclusion that, though the judgment must be reversed, the city would eventually be entitled to recover. The reasons assigned were that the city could only bind itself by an ordinance, and could not be estopped by acts *in pais.* Murray, C. J. and Terry, J. signed a special concurrence as follows: "We concur in reversing the judgment of the Court below, on the first ground stated in the opinion of Judge Burnett, but differ with him as to the other questions passed upon in his opinion." If this case is to be regarded as authority at all, it stands in direct antagonism to *Seale* v. *The City of San Francisco,* and expressly repudiates the doctrine that a municipal corporation cannot be bound by acts *in pais.*

In *Holland* v. *The City of San Francisco* (7 Cal. 361) the questions involved were entirely different, and it will be sufficient for us to determine whether we will adhere to the principles of that case, when the same questions are again brought before us.

From this examination of the authorities, it is evident that the doctrine contended for by the counsel for the city cannot be maintained. The theory is, that the municipal corporation can only be bound by a contract to which it has expressly assented, and that such a corporation is exempt from the operation of the rules which relate to and govern the contracts and liabilities of individuals. We readily admit that the powers of the corporation are derived solely from the act creating it; and that, as a general rule, these powers must be exercised in the particular mode pointed out by the charter. It does not follow, however, that even a want of authority is, in all cases, a sufficient test for the exemption of a corporation from liability in matters of contract. Of course, an executory contract, made without authority, cannot be enforced; but a different question arises where the contract has been executed, and the corporation has received the benefit of it. In such a case, the law interposes an estoppel, and will not permit the validity of the contract to be called in question.

It remains to be determined whether the plaintiff has made out a case upon which he is entitled to recover, and if so, to what extent. It is shown by the evidence, that the improvements mentioned in the complaint were constructed for the exclusive benefit of the city and its inhabitants; that these improvements were of a valuable and permanent character, and were constructed in pursuance of certain contracts

Argenti *v.* City of San Francisco.

entered into with an officer of the corporation, who executed the same in his official capacity; that, in making the improvements, reliance was placed upon the validity of these contracts, and the obligation of the city to pay as therein provided; that the improvements were made under the immediate supervision of an officer of the city government, and, when completed, were approved of and received by him on behalf of the city; that the authorities of the city were fully informed of these facts, and took no steps to repudiate the contracts, or enlighten the plaintiff as to the disposition of the city to pay for the improvements. Such other facts as are necessary to be noticed, will be referred to in connection with the subjects to which they relate.

It is not disputed that the city received the benefit of the improvements for which the plaintiff seeks to recover; and so far as these improvements are concerned, the question is, whether there was any contract, express or implied, to pay. The fact that the improvements were constructed for the benefit of the city, is sufficient to raise the presumption of a contract; and it will not be contended that there is anything in the evidence to destroy the effect of this presumption. But, in our opinion, the plaintiff is entitled to recover upon the contracts under which the improvements were made. It is true, there is no evidence that the agent who signed these contracts on behalf of the city was *expressly* authorized to do so; but it sufficiently appears that the city authorities were cognizant of the facts, and their silence, under the circumstances, was equivalent to a direct sanction of the acts of the agent, and estops the city from denying his authority. It was well known that these contracts, involving, as was supposed, the liability of the city, were the only considerations inducing the construction of the improvements, and now that the improvements have been completed, and the city has received the benefit of them, it is too late to repudiate the contracts and avoid responsibility. It is unnecessary to enumerate the various acts of the city government in relation to these contracts. They were acquiesced in from the commencement to the completion of the improvements, and until the city had received all the benefit to be derived from their performance, their validity was never called in question. We think that upon no principle of law or equity can this be done now. It would be a fraud upon the plaintiff to permit it, and it is a proper case in which to invoke the protection of an estoppel.

In reference to the warrants, the rights of the plaintiff stand upon a different footing. They are drawn upon a particular fund, and cannot,

Argenti *v.* City of San Francisco.

therefore, be regarded either as bills of exchange or promissory notes. The designation of the fund was not intended as a mere direction to the Treasurer, and such is not its legal effect. He had no discretion as to the mode or means of payment. He was required to pay from moneys belonging to the fund mentioned in the warrants, and was not at liberty to resort to any other source for that purpose. The effect of the warrants must be controlled by the terms and conditions expressed upon their face, and these are too plain to admit of any doubt as to their construction. The failure to pay them did not alter their nature, or so change their legal effect as to render them the proper subjects of an action. The only remedy was an action upon the original indebtedness, and in such an action it is possible that the warrants might have been used as evidence for the purpose of establishing the indebtedness. It is clear, however, that no action can be maintained upon the warrants themselves.

Our conclusion is, that the right of the plaintiff to recover is limited to the amount specified in the contracts to which we have referred, and legal interest upon such amount. The judgment is for a larger sum than the plaintiff is entitled to recover, and must, therefore, be reversed. Upon the return of the cause, the Court below will render a judgment in accordance with this opinion.

Judgment reversed, and cause remanded.

On petition for rehearing, FIELD, C. J., at the October term, delivered the following opinion:

This case was decided some weeks ago, and I concurred in the judgment then rendered. Since the petition for a rehearing has been pending before the Court, I have carefully reconsidered the case, and as I differ from the views expressed by Mr. Justice Cope, as to the grounds of the liability of the city, I will proceed to state the reasons upon which I rest my concurrence. The action is brought to recover for services rendered and materials furnished in grading and planking certain streets, and in the construction of certain sewers in San Francisco, under alleged contracts with the city, and for moneys alleged to have been received by the city for the use of the plaintiff, and for the amount of certain warrants drawn upon the Treasurer by the Controller, and countersigned by the Mayor of the city. The greater number of these warrants were issued and delivered to the plaintiff, for the work performed and materials furnished under the alleged contracts. The balance of the war-

rants were not issued to the plaintiff, and are held by him by assignment, without a transfer of the claims for which they were drawn. The judgment rendered by the Court below, covered the entire amount demanded. This judgment was reversed, this Court holding that the right of the plaintiff to recover was limited to the amount specified in the contracts. The warrants by themselves furnish no ground of recovery. They are neither bills of exchange nor promissory notes; they are drawn against a particular fund, and are not payable absolutely, but only in case the designated fund is sufficient to meet them. Besides this, a large number of the warrants do not comply, in their form, with the requirements of the charter in force at the time. The eighth section of the third article of that charter provides, that " every warrant upon the treasury, shall be signed by the Controller, and countersigned by the Mayor ; and shall specify the appropriation under which it is issued, and the date of the ordinance making the same. It shall also state for what purpose the amount specified is to be paid." Many of the warrants neither specify the appropriations under which they were issued, or the date of the ordinances making the same. They would not, therefore, constitute any authority to the Treasurer to pay them, even if there were funds in the treasury specially appropriated for their payment. The warrants must, therefore, be laid out of consideration in determining the case, and the right of the plaintiff to recover must turn upon the sufficiency of the claim, arising from the alleged contracts with the city, or for the moneys alleged to have been received by the city for his use.

It may be observed here, before proceeding to consider these contracts, that the opinion rendered in *Seale* v. *The City of San Francisco*, at the July term, 1858, to which reference is made, never became authority. A rehearing was granted in that case, and no one is better aware than the learned counsel for the defendant, that when a rehearing is granted, the opinion previously delivered falls, unless reäffirmed after the reärgument. Until such reäffirmance, the opinion never acquires the force of an adjudication, and is entitled to no more consideration than the briefs of counsel. The opinion subsequent to the reärgument constitutes the exposition of the law applicable to the facts of the case, and the only one to which the attention of the Court can be directed. In the Seale case, the opinion referred to has never been reäffirmed since the reärgument, but, on the contrary, the case still remains before the Court undetermined.

The facts of this case, as disclosed by the record, are briefly these :

On the twenty-first of July, 1853, the Common Council passed the following ordinance: "The People of the city of San Francisco do ordain as follows: Section 1. That the Street Commissioner be, and he is hereby authorized to advertise for ten days, in a daily newspaper, for proposals to grade, plank and sewer Mission street, from the center of First to the center of Third street; the same to be paid for by the property holders adjacent; the grade to conform to the new grade established by ordinance; and the proposals to be opened and awarded by the Street Commissioner, with the Committee on Streets from both Boards of Aldermen." This ordinance was published for ten days successively, in a daily newspaper of the city, and the advertisement required was made in like manner, for the same period. Proposals, based upon certain specifications, were received under the ordinance, and opened by the Committee of the two Boards and the Commissioner, and the work awarded by them to one William A. Barton. On the fifth of August following, the instrument embraced in the record was signed by the Street Commissioner, purporting to act in the name of the city of the one part, and the contractor of the other part. This instrument sets forth, that the city has accepted the bid or proposal of Barton, and agreed to pay him for the work according to certain designated rates; and in consideration of the sums "so agreed to be paid" by the city, Barton, on his part, agrees to proceed immediately and perform the work according to the specifications, in reference to which his bid or proposal was accepted—the whole to be done to the satisfaction of the city and the Street Commissioner. Barton commenced the work, and continued upon the same until the thirty-first of the month, when he transferred his contract and his interest therein to the plaintiff, who proceeded and completed the work. And it is expressly found by the Court, that the work was done "in the very best manner, and to the satisfaction of the Street Commissioner and of the defendant."

On the fifth of August, 1853, the Common Council also passed the following ordinance: "The People of the city of San Francisco do ordain as follows: Section 1. That the Street Commissioner be, and he is instructed to advertise, according to law, that it is the intention of the city to grade, sewer and plank Mission street, from the center of First to Main street; the expense of the same to be paid by the property along the line of said street." This ordinance was published, and the required advertisement was made in like manner and for the same period as the other ordinance and advertisement; and proposals there-

under, accompanied with certain specifications, were received from one William Swain, and were accepted "by the defendant." On the fifteenth of September following, an instrument, purporting to be a contract, was signed by the Street Commissioner, assuming to act on the part of the city, with Swain, corresponding substantially in its form with the instrument executed by him and Barton, already mentioned. Upon its execution, Swain commenced the work for which he contracted, and continued the same until the seventh of October, when he made a transfer of his interest to the plaintiff, similar to the one made by Barton; and the plaintiff proceeded and completed the work in the very best manner, as found by the Court, and to the like satisfaction of the Street Commissioner and of the defendant.

The work under the two contracts was measured, as it progressed, by the Engineer of the city, and the accounts for the same were duly certified by him. These accounts were duly audited, and upon them the warrants in the complaint, which are payable to the plaintiff, were drawn by the Controller. It is found by the Court, that the warrants were issued and delivered to the plaintiff by the authority of the city, at the time they respectively bear date; that they were presented to the Treasurer, and payment demanded; that the payment was refused, on the ground that there were no funds in the treasury applicable to them; that previous to the demand, assessments had been duly levied by the city upon the property adjacent to the improvements, for the purpose of meeting their expenses, and that these assessments had been collected by the collector of street assessments, and by him paid into the city treasury.

Upon these facts the plaintiff claims a right to recover, either upon the express contracts, or upon the warrants, or upon implied contracts, for the services rendered and materials furnished, or for money received by the defendant to his use. There are several counts in the complaint sufficient to cover the demand of the plaintiff in all of these forms.

The thirteenth section of article three of the Charter of 1851, under which the ordinances in question were passed, vests in the Common Council the authority to pass all proper and necessary laws for opening and repairing streets, and for the construction of sewers in the city. The second section of article five provides that whenever the Common Council shall think it expedient to improve any street, notice thereof shall be given by publication for ten days in some daily paper, and

that, should one-third of all the owners of the adjacent property protest against the proposed improvement, it shall not be made; but if no such protest be made, the Common Council shall proceed with the improvement, and that at least two-thirds of the expense shall be borne by the property adjacent. The third section of the same article provides that the assessment for the improvement shall be made by the Commissioners of Assessment; and by the first section, the Mayor, Street Commissioner and Assessor are constituted such Commissioners. The seventh section of article six declares that all contracts for work, or supplies, shall be let to the lowest bidder, after notice given through the public newspapers. The eleventh section of article four authorizes the Common Council to prescribe the duties of all officers, where these are not defined in the charter, or by any other law of the State. The duties of the Street Commissioner not being thus defined, the Common Council, by a general ordinance, passed in November, 1852, constituted him the chief officer of the street department, and enacted that the department should "embrace in its authority the opening, constructing, regulating, improving and repairing of all public streets, yards, lanes, alleys, sewers, lands, places, wharves, docks, piers, and basins, and the care, supervision and control thereof."

It will be thus seen that the charter vests in the Common Council the authority to order the improvements in question, and directs the mode in which the intention to make the same shall be indicated, the conditions upon which the work shall proceed, and the parties to whom the contract shall be awarded; and the general ordinance of November, 1852, designates the officer under whose supervision, on behalf of the city, the work shall be done. In the present case, the ordinance of July 21st, 1853, sufficiently indicates the intention of the Common Council to make the improvements; it states the work to be done, and the character of the grade; it calls for proposals and directs the award of the work; and the charter determines the party to whom the award shall be made. The ordinance was duly published, the advertisement duly made, the proposals received, and the work awarded. The contract was thus complete on both sides, and no protest having been interposed, it only remained to carry the same into execution. It is, therefore, of no moment, in my judgment, whether or not the Street Commissioner had authority to bind the city by the particular written instrument embraced in the record. The parties were mutually bound by the proceedings previously taken—the contractor in accordance with

his bid and accompanying specifications, which were accepted—the city to pay him either directly, or to collect the amount by assessment upon the property, and transfer it to him.    The drawing up of a formal contract, specifying its terms, is the usual proceeding upon the acceptance of a bid for a contemplated improvement; and, for many reasons, should be insisted upon, especially to avoid dispute as to the extent and details of the work.    This can, however, only be a matter of moment, when it is attempted to enforce the contract against the contractor, or to hold him responsible for its imperfect fulfillment.    It is of no consequence, where there is no complaint on the part of the city as to the performance of the contract.    In the present case, it is expressly found by the Court below, that the work was completed to the satisfaction of the Commissioners and of the city.    The record does not disclose in what manner the satisfaction of the city was expressed, but it must be presumed, under the finding, to have been in a legal and authorized manner.    I leave, therefore, out of consideration the instrument drawn up between the Street Commissioner and the contractor, and pass by the question whether the Commissioner had authority to execute it.    This instrument does not purport to impose any additional duties upon the contractor beyond what devolved upon him from the acceptance of his proposals.    It does, however, purport to bind the city for the payment of the work, and it is this feature which is the point of objection.

The second ordinance, passed on the fifth of August, 1853, differs materially from the first ordinance.    It does not call for proposals, or authorize the acceptance of any.    It simply indicates the intention of the Common Council to make certain improvements.    Further action was requisite on the part of the Common Council, to authorize the work designated.    Such further action, it appears, was taken; for it is found by the Court below that proposals for the work were made to the city by Swain, and were *accepted by the city*.    The record does not disclose the manner in which the acceptance was made, but the presumption follows, from the finding, that it was in a legal and authorized form.    With their acceptance, the contract was complete, and to it the same observations are applicable which have been made in relation to the contract with Barton.    The work was performed, and according to the finding of the Court, as we have already stated, in the very best manner, to the satisfaction of the Street Commissioner and of the city.

It follows, from the views I have expressed, that the acceptance of

the proposals of Barton by the Street Commissioner and the committees of the two Boards, under the direction of the ordinance of July 21st, 1853, and those of Swain by the city in proper form, converted what were previously mere propositions of the city into contracts, perfect in all their parts, binding alike upon the city and the contractors. The inquiry then arises as to the extent of the obligation assumed by the city.

The first ordinance, it will be seen, provides that the expenses of the improvement proposed should be paid for by the property holders adjacent; and the second ordinance, by the property along the line of the street. The counsel of the plaintiff contends that the city is primarily liable, and is to look to the property for reimbursement, and the counsel of the defendant contends that the city is the simple agent by whom the property is to be assessed, and the money collected and paid over to the contractors. It is to be observed that the language of the two ordinances is different; in the first, the expense is to be paid by the property *holders;* in the second, by the property. I am of opinion that the city is primarily liable; and that she, and not the contractors, must look to the property or the property holders for meeting the necessary expenses, and for various reasons. The improvements are to be made by the city, and the contracts are with the city. To the contracts there are but two parties, the parties bidding and the city accepting. The property holders are not parties to the contracts. There is no privity between them and the contractors, or between the property and the contractors. The city is to levy the assessments and enforce the payment. Over her acts the contractors can exercise no control, and her acts cannot properly enter into any consideration with them. They cannot assert any claim against the property or its holders. They must look alone to the city. They do not possess any lien, even, upon the property. It is the duty of the city—of her government—to make the assessment and collect the same, and the contractors are mere strangers to the proceedings, as much so as any officer who draws a salary from the State is to any proceedings to enforce the revenue laws. The clauses in the ordinances constitute only a designation of the sources upon which the city intends to rely to pay for the improvements, and subserve the double purpose of informing the owners of the property of what they may expect in case they interpose no protest to the improvement, and of imparting assurance to the contractors of their obtaining payment for the work, independent of any question as to the

19

Argenti *v.* City of San Francisco.

amount of her general indebtedness.  In the assessment for the improvements, which are the subject of consideration in the present case, the city has acted upon the assumption that she was primarily liable, and not that she was a mere agent of the contractors.  She has authorized the payment of the assessments upon the property, levied to meet the expenses of the improvements, to be made in her outstanding warrants, and in this way the entire assessments have been discharged.

The question is thus rendered of little practical moment in the present case, for the city, having collected the amount of the assessments, would be liable to the plaintiff, even if not so primarily.  She would be liable as for moneys received.  It matters not that she took in lieu of the money outstanding warrants, or evidences of debt.  She took that which she deemed equivalent to money, and discharged the assessments; and if, as contended by counsel, it was simply her duty to collect for the plaintiff the money, she could be compelled to account to him for that which she took as such; and in this view a recovery could be sustained upon the count for money received to his use.

But I place my concurrence in the judgment heretofore rendered in this case upon the validity of the contracts with the city, which were completed by the acceptance of the proposals of the contractors, and the primary liability of the city for the work performed thereunder. I have been thus explicit, because I do not consider that, independent of such contracts, any liability would attach to the city for the improvement of the streets.  A municipal corporation can only act in the cases and in the mode prescribed by its charter, and for street improvements of a *local* nature, express contracts, authorized by ordinance, are necessary to create a liability.  The doctrine of liability, as upon implied contracts, has no application to cases of this character.  That doctrine applies to cases where money or other property of a party is received under such circumstances that the general law, independent of express contract, imposes the obligation upon the city to do justice with respect to the same.  If the city obtain the money of another by mistake, or without authority of law, it is her duty to refund it—not from any contract entered into by her on the subject, but from the general obligation to do justice which binds all persons, whether natural or artificial. If the city obtain other property which does not belong to her, it is her duty to restore it; or if used by her, to render an equivalent to the true owner, from the like general obligation.  In these cases she does not, in fact, make any promise on the subject, but the law, which always

Argenti *v.* City of San Francisco.

intends justice, implies one ; and her liability thus arising is said to be a liability upon an implied contract, and it is no answer to a claim resting upon a contract of this nature, to say that no ordinance has been passed on the subject, or that the liability of the city is void when it exceeds the limitation of $50,000 prescribed by the charter.   The obligation resting upon her is imposed by the general law, and is independent of any ordinance, and the restraining clauses of the charter. It would be, indeed, a reproach to the law, if the city could retain another's property because of the want of an ordinance, or withhold another's money because of her own excessive indebtedness.

In reference to money, or other property, it is not difficult to determine, in any particular case, whether a liability with respect to the same has attached to the city.   The money must have gone into her treasury, or been appropriated by her, and when it is property other than money, it must have been used by her, or be under her control.   But in reference to services rendered, the case is different.   Their acceptance must be evidenced by ordinance to that effect.   Their acceptance by the city, with the consequent obligation to pay for them, cannot be asserted in any other way.   If not originally authorized, no liability can attach upon any ground of implied contract.   The acceptance, upon which alone the obligation to pay could arise, would be wanting.

The improvements for which the claim is brought in the present case, were local in their character, and though, to some extent, of general benefit, yet were chiefly for the benefit and advantage of the immediate neighborhood.   It is for this reason that assessments for such improvements are generally levied upon adjacent property.   The advantages resulting from them do not constitute that kind of general advantage to the city, from the existence of which any liability to pay for the same can be inferred.   The general rule, that when one takes a benefit which is the result of another's labor, he is bound to pay for the same, does not apply to cases of this kind.   The benefit is immediately to the adjacent property holders, and only indirectly to the city at large.

I admit that there are numerous authorities which conflict with these views.   Indeed, upon the general subject of the extent of the liability of a municipal corporation, the authorities are a tangled web of contradictions, and it is difficult to assert any proposition with respect to the same for which adjudications on both sides may not be cited.   As a general rule, undoubtedly, the city is only liable upon express con-

tracts, authorized by ordinance.   The exceptions relate to liabilities from the use of money, or other property, which does not belong to her, and to liabilities springing from neglect of duties imposed by the charter, from which injuries to parties are produced.   There are limitations even to these exceptions in many instances, as where the property or money is received in disregard of positive prohibitions; as for example, she would not be liable for moneys received upon the issuance of bills of credit, as this would be in effect to support a proceeding in direct contravention of the inhibition of the charter.   Other limitations may exist, but it is unnecessary to pursue the matter any further.

The former judgment must stand, reversing the judgment of the Court below, with directions to strike out so much of the demand as rests upon the warrants alone, and to enter judgment only for the amount due upon the contracts.

Rehearing denied.

COPE, J.—I concur in the denial of the rehearing, and adhere to the views expressed in my original opinion.