JOHN P. DAVIS v. SCHOOL-DISTRICT NO. ONE OF THE CITY AND TOWNSHIP OF NILES.

*Schools and school-districts—Qualification of teacher—Employment of superintendent—Acceptance of services—Implied assumpsit.*

1. Teachers in graded schools are required to have certificates in the same manner as teachers in primary schools. How. Stat. §§ 5065, 5134.

2. A person employed by the board of trustees of a graded school-district to superintend and manage its schools need not be a teacher nor have a teacher's certificate.

   So *held*, where, owing to the sickness of the superintendent, the principal of the schools, by an arrangement with the director, procured the school supplies, visited the five ward schools, maintained proper order and discipline throughout the school buildings, and performed the duties of the superintendent, and in a suit to recover for such services it appeared that he had no teacher's certificate, and a verdict was directed against him for that reason.

3. *One* of the trustees of a graded school-district, acting as director, cannot employ a superintendent of schools, under How. Stat. § 5134 (subd. 5), which authorizes the *board* of trustees to employ such officers and servants as may be necessary for the management of the schools and the school property.

4. In such a case, if the services contracted for are actually accepted by the board of trustees, with full knowledge of all of the facts, the same rule should govern as to the liability of the corporation as is applied where money or other property is received

under such circumstances that the law raises an implied promise
on the part of the corporation to pay for the same.[1]

Error to Berrien. (O'Hara, J.) Argued May 8, 1890.
Decided June 6, 1890.

*Assumpsit.* Plaintiff brings error. Reversed. The
facts are stated in the opinion.

*O. W. Coolidge* and *E. L. Hamilton,* for appellant, con-
tended:

1. The hiring of teachers for *graded* schools is not governed by
   How. Stat. § 5065, which defines the word "qualified," and
   limits the employment of teachers in *primary* schools to those
   who have certificates from the proper authority, but by How.
   Stat. § 5134 (subd. 4), which authorizes the trustees to employ
   all *qualified* teachers necessary for the several schools of the
   district, whose qualifications are not controlled by any arbitrary
   statutory rule, but the trustees ·have full discretionary power;
   citing *Tappan v. School-dist.,* 44 Mich. 502; *Stuart v. School-
   dist.,* 30 Id. 85.

2. The superintendent of schools is an officer and servant, and need
   not be employed as a teacher, or teach a single class, and the
   provision applicable to teachers has no bearing upon the
   employment of such superintendent; citing *Stuart v. School-
   dist.,* 30 Mich. 69.

3. Plaintiff was at least entitled to recover for the services rend-
   ered as a mere servant of the defendant, which were neces-
   sary in their character, and performed by the request of the
   director, and with the knowledge of the board of trustees (cit-
   ing *School-dist. v. Snell,* 24 Mich. 352), and without whose
   express sanction the director may incur expense for whatever
   is necessary for the proper equipment of the schools, using a
   proper discretion; citing *School-dist. v. Snell,* 24 Mich. 352;
   *Hamtramck v. Holihan,* 46 Id. 127; *McLaren v. Akron,* 48 Id.
   189.

4. The liability of a school-district to pay a teacher for services act-
   ually rendered has been maintained in *Stockdale v. School-dist.,*
   47 Mich. 226; *Crane v. School-dist.,* 61 Id. 299.

5. In support of the claim that the action of the director was rati-
   fied, and that defendant is estopped from denying its liability,

[1] See *Crane v. School-dist.,* 61 Mich. 299; *Smith v. School-dist.,*
69 Id. 589; *Devoe v. School-dist.,* 77 Id. 610.

counsel cited *Scott v. Church*, 50 Mich. 532, and cases cited; *Crane v. School-dist.*, 61 Id. 306; *Grand Rapids v. Railroad Co.*, 58 Id. 642; *Whitney v. Wyman*, 101 U. S. 392; *Gas Co. v. Berry*, 113 Id. 322; *Hasbrouck v. Milwaukee*, 21 Wis. 217; *State v. Trustees*, 8 Ohio St. 394.

*Theo. G. Beaver* (*George S. Clapp*, of counsel), for defendant, contended:

1. It requires official action to dismiss and appoint teachers and superintendents, and fix salaries, and, if the district acts at all, it does so in its corporate capacity; citing How. Stat. § 5134 (subd. 4); *Wall v. Eastman*, 1 Mich. 268; *Hazen v. Lerche*, 47 Id. 626.

2. Our Legislature may be wrong, but the laws it has enacted refuse to permit as enforcible express or implied contracts for teachers' services in the graded schools of the State unless the teacher has complied with the law, and has the statutory certificate, and is a *qualified* teacher; citing How. Stat. §§ 5065, 5134 (subd. 4, 6), 5162; *Devoe v. School-dist.*, 77 Mich. 610.

3. It is no answer to say that the duties of a superintendent are not only literary, but executive. He is employed as is a master mechanic or the superintendent of some complicated factory, and should not only know how to impart his knowledge, but to teach his teachers to teach; to have courage to lop off the worthless and inefficient; to bring all the work to a standard; to stimulate the zeal and enthusiasm of his teachers; to correct deficient methods; and to be the head of a colony of instructors and pupils working with an intelligent aim and purpose to a wise end. The statute should not be circumvented by dubbing an unqualified teacher a "superintendent."

4. In answer to the claim of an estoppel, counsel cited *Devoe v. School-dist.*, 77 Mich. 610; *Bank v. School Township*, 44 N. W. Rep. 1002.

5. Where a contract is void because of the express declaration of a statute, or because prohibited in terms, the retention by a municipality of its fruits will not subject it to a liability either under the contract or upon a *quantum meruit;* citing *Dickinson v. Poughkeepsie*, 75 N. Y. 65; *McBrian v. Grand Rapids*, 56 Mich. 95, and cases cited on page 106; *Commissioners v. Van Dusan*, 40 Id. 429; *Thomas v. Richmond*, 12 Wall. 349.

CAHILL, J. The plaintiff sued the defendant, a graded school-district, to recover for services rendered during the months of April, May, and June, 1887, as superintendent.

The plaintiff had been employed at the beginning of the year as principal of the high school, at a salary of $900 a year, and performed the duties of his position, and received his salary. One J. L. Lucas had been employed as superintendent of the schools, entered upon the discharge of his duties, and continued to perform them until April 20, 1887, at which time he was attacked with hemorrhage of the lungs, and was obliged to give up his position as superintendent. A few days thereafter plaintiff met Mr. Gilbert, the director of the school-district, and said to him:

"Mr. Lucas has just told me that you had a meeting, and had decided to have me take care of his work, in preference to getting a new man unfamiliar with the duties of the place."

Mr. Gilbert replied:

"Well, how much work is there to do?"

The plaintiff answered:

"There is a good deal of work there. There is all the superintending duties, requiring from six to ten hours a day extra. I am paid for working as principal. I don't think I ought to be expected to do superintendent's work without being paid for it. * * * I object seriously to undertaking the work."

Finally the director said:

"You go on, Davis, and do the work. You can do it better than any stranger, because you are already familiar with the building, the teachers, and pupils. You go on, and do the work. I said: 'I have told you I cannot undertake that work unless I know what will be the outcome. I don't propose to go into that work. I was not hired to do superintendent's work.' He said: 'You go on. There is only 8 or 10 weeks left this year. You go on, and we will see that it is all right.' I said: 'If you say you think it is all right I will go on, and do the work.' He said: 'You go on, and do the work the best you can.'"

Plaintiff further testified:

" *Q.* You may state what service you performed outside of teaching.

" *A.* I performed the regular superintendent's duties,— the duties that the superintendent would exercise in superintending and managing the school. I attended to the school supplies, the books in the library, chalk, pointers, map, globe, and so on. I also went down town for supplies on several occasions. Visited the ward schools when occasion demanded. There are five ward schools."

Plaintiff also testified that he maintained proper order and discipline throughout the school buildings,—all the school buildings, the central building and the branch buildings,—administered punishment to refractory pupils, superintended the graduating exercises from beginning to end, trained candidates for essays and orations, and entered reports in the school records; that, after the school term closed, plaintiff spent about two weeks straightening up the books of the library, getting the records where they belonged; that he got everything in good condition for the next year, so that, whoever his successor might be, he would find things in an orderly condition; that these services were no part of his duty as principal; that the first three or four weeks these extra services required three or four hours a day; that the last six weeks they required six or eight hours a day, and that he was kept busy morning and night.

" *Q.* What were those services worth during that time, outside of teaching?

" *A.* I should estimate them $200 to $250 outside of teaching."

The plaintiff offered to show that the services rendered by him were performed not only at the request of the director, but with a knowledge, more or less, of the board of trustees. Defendant objected to the evidence thus offered, and the objection was sustained. It appeared up-

on the trial that the plaintiff had no certificate qualifying him as a teacher, and the circuit judge directed the jury to return a verdict for the defendant upon the ground that, as the plaintiff did not hold a certificate issued by an officer having power to issue such certificates, he could not recover for any services rendered by him for the district.

The opinion of the circuit judge was doubtless based upon paragraph 4 of section 5134 of Howell's Statutes, which provides as follows:

"It shall be the duty of the board of trustees of any graded school-district, * * * * * * * * *
"*Fourth.* To employ all *qualified* teachers necessary for the several schools, and to determine the amount of their compensation, and to require the director and moderator to make contracts with the same on behalf of the district, in accordance with the provisions of law concerning contracts with teachers."

If the services rendered by the plaintiff, for which he sought to recover in this action, had been rendered as a teacher, this provision of the statute would have applied. Teachers in graded schools are required to have certificates in the same manner as teachers of primary schools.[1] But the services rendered by the plaintiff were, in part at least, outside of teaching. Paragraph 5 of section 5134 authorizes the board of trustees to employ such officers and servants as may be necessary for the management of the schools and the school property, prescribe their duties, and fix their compensation. Under this provision the person employed is not required to be a teacher, nor to

[1] How. Stat. § 5065, authorizes the district board of a primary school-district to "hire and contract with such duly-qualified teachers as may be required;" but "no contract with any person not holding a legal certificate of qualification *then* authorizing such person to teach shall be valid, and all such contracts shall terminate *if the* certificate shall expire by *limitation* and shall not immediately be renewed, or if it shall be suspended or revoked by proper legal authority."

have a certificate as a teacher. We think the plaintiff, if duly employed to render the services he claims to have rendered for the school-district, was not disqualified from receiving compensation therefor by the fact that he had no certificate as a teacher.

The doubtful question in the case is as to whether the plaintiff was legally employed to perform the duties for which he seeks compensation. It is clear that he was not, in the first instance, so employed, because such employment is required to be made by the board of trustees, and one of such trustees, acting as director, could not lawfully employ the plaintiff so as to bind the district. But, as this contract of employment was one which the board itself could lawfully make, the question arises as to whether, if the plaintiff actually performed the duties with the knowledge and consent of the board, and the district received the benefit of his services, the law will not imply a promise on the part of the district to pay what such services were reasonably worth. Cases are not wanting which hold that municipal corporations may become liable upon an implied *assumpsit*. Where a municipal corporation receives money or property of a party under such circumstances that the law, independent of express contract, imposes the obligation upon the corporation to do justice with respect to the same, it has been held that it may be liable to an action. *Argenti v. San Francisco,* 16 Cal. 255. In the case just cited, Chief Justice Field says (p. 283) that,—

"In reference to services rendered, the case is different. Their acceptance must be evidenced by ordinance [or express corporate action] to that effect. * * * If not originally authorized, no liability can attach upon any ground of implied contract. The acceptance, upon which alone the obligation to pay could arise, would be wanting."

I do not see why any distinction should be made

between services rendered and appropriated by municipal corporations, and any other property so received and appropriated, except that it might be more difficult, in the case of services rendered, to show an actual acceptance and intentional appropriation than in the case of tangible property. But, if the proof showed that the services were actually accepted by the corporation with full knowledge of all the facts, I think the same rule ought to apply to services rendered that would apply to money or other property. It does not appear what the plaintiff could have shown as to the services having been performed with the full knowledge and assent of the board of trustees. The offer of proof by him on this subject was rejected, and we think erroneously.

For this error, and also for the direction of the court that the jury should return a verdict for the defendant, the judgment must be reversed, and a new trial granted.

The other Justices concurred.